UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILLIAN BROWN, *on behalf of herself and all others similarly situated*,<br><br>  Plaintiff,<br><br>v.<br><br>22ND DISTRICT AGRICULTURAL ASSOCIATION, a State entity; and DOES 1 through 10, inclusive,<br><br>  Defendant. | Case No. 15-cv-2578-DHB<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF NATIONWIDE CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>**[ECF No. 33]** |

On November 17, 2015, Plaintiff Gillian Brown ("Plaintiff") commenced this class action against Defendant 22nd District Agricultural Association (the "Association" or "Defendant") seeking relief for violations of the Fair and Accurate Credit Transaction Act, 15 U.S.C. § 1681, *et seq.* ("FACTA"). (ECF No. 1.) On February 8, 2016, the Association filed a Third Party Complaint against Cross-Defendant Solar on Set, LLC ("Solar") alleging breach of contract, breach of the implied covenant of good faith and fair dealing, express contractual indemnity, comparative indemnity, equitable indemnity, and declaratory relief. (ECF No. 10.)

Plaintiff now moves unopposed for preliminary approval of a settlement reached between the parties and for certification of a settlement class. (ECF No. 33.)

The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Approval of Nationwide Class Action Settlement.

## I.  PROPOSED SETTLEMENT

### A.  Settlement Class

Following many months of litigation and attending mediation with the Court, the parties have reached a proposed settlement of this matter ("Settlement"). (Class Action Settlement Agreement and Release ("Settlement Agreement") ECF No. 35.)[1] The Settlement applies to a proposed Settlement Class that is defined as follows:

> [T]hose persons who were issued an electronically printed debit and/or credit card receipt during the San Diego County Fair at the Del Mar Fairgrounds in violation of the truncation requirements of FACTA at any time between September 30, 2010 and the date of preliminary approval of [the Settlement].

(*Id.* § 2.31.) The parties estimate that Defendant generated approximately 100,000 allegedly defective receipts at the 2011-2015 County Fairs. (ECF No. 33-1 at ¶ 24.) A Settlement Class Member is a person or entity who is encompassed by the Settlement Class and does not timely and properly opt out of the Settlement. (ECF No. 35 at § 2.31, 11.1.)  To represent the Settlement Class, the parties agree to seek appointment of Plaintiff as Class Representative and Gaines and Gaines, APLC—as Class Counsel. (*Id.* § 2.6, 2.9.)

/ / /

/ / /

/ / /

---

[1] Capitalized terms used in this Order but not defined herein have the meanings ascribed to them in the Settlement Agreement.

### B. Settlement Fund

The Association and Solar deny that they have violated FACTA or any other law or agreement, but agree to the following economic relief:

1. Reduced Admission Prices. Each admission entrance fee for the 2017 San Diego County Fair (subject to a $750,000 total reduction cap) shall be reduced fifty (50) cents from the then-current fair market value of such admission prices as determined by the Neutral Expert or as otherwise agreed upon between Class Counsel and the Association and the Association's counsel. To the extent the reduction cap has not been met through the 2017 San Diego County Fair fee reduction, each admission entrance fee for the 2018 San Diego County Fair (subject to a $750,000 total reduction cap, inclusive of the previous year reduction) shall be reduced pro rata based on a calculation of the expected 2018 attendance and the remaining amount under the reduction cap. The Neutral Expert shall conduct its analysis and provide its recommendations no later than the Opt-Out and Objection Deadline, and the final agreed upon pricing for the 2017 San Diego County Fair shall be submitted to the Court in connection with the Motion for Final Approval. (Settlement Agreement § 9.2.)

2. A Common Fund in the amount of $175,000 ($170,000 by the Association and $5,000 by Solar) to be used to compensate (1) the Settlement Administrator for its services in providing publication and website notice and other settlement administration services; (2) Plaintiff Gillian Brown for an incentive award; (3) Class Counsel for their attorney's fees and costs; and (4) the Neutral Expert. Any unawarded or unrequested portion of the Common Fund shall be paid to a privacy protection-related *cy pres* recipient to be proposed to the Court in connection with the Motion for Final Approval. (*Id.*)

### C. Notice to Settlement Class Members

The Settlement requires the Settlement Administrator to provide three forms of notice to the Settlement Class Members. (Settlement Agreement § 10.) First, the

Settlement Administrator will establish and maintain the Settlement Website to provide information regarding the Settlement. (*Id.* § 10.2(A).) The Settlement Website will provide access to the Website Notice that contains among other things, a summary of the terms of the Settlement, instructions for opting out of the settlement or objecting to the settlement, and a notice in question and answer format that provides more detailed information about the settlement and other matters. (ECF No. 33-2 at 45-52.)

Second, the Association's website shall include a link to the Settlement Website and brief description of the Action on the landing page of the Association's website for a period of 60 days following the Notice Deadline. (Settlement Agreement § 10.2(B).)

Third, notice will be provided by publication in a newspaper of regional circulation in Southern California, and will be published two times during the first 30 days following the Notice Deadline. (*Id.* § 10.2(C).)

### D. Right to Opt Out or Object and Release of Claims

Settlement Class Members will have 60 days after the Notice Deadline to opt out of the Settlement, object to the Settlement, or seek to intervene in the Action. (Settlement Agreement § 11.) Class members may opt out by submitting a written request by mail to the Settlement Administrator. (*Id.* § 11.1.) If more than 100 Settlement Class Members opt out of the Settlement, the Association has the sole and absolute discretion to terminate the Settlement. (*Id.* § 16.2.)

Upon final approval of the Settlement, all Settlement Class Members shall be deemed to have released and discharged the Association and Solar from any and all claims that are known or unknown to the class members and relate to the this action. (Settlement Agreement § 15.)

### E. Attorneys' Fees and Settlement Costs

As compensation for its services and to recover its expenses, Class Counsel may move the Court for an award of attorneys' fees and expenses paid from the

Common Fund, not to exceed $150,000.  (Settlement Agreement § 6.)  Neither the Association nor Solar shall oppose any request that does not exceed $150,000.  (*Id.*)  Class Counsel will also seek from the Court an incentive payment for Plaintiff in an amount not to exceed $5,000.  (*Id.* § 6.2.)   In addition, the Association and Solar agree to pay all costs necessary to administer the Settlement and provide class notice as detailed in the Settlement Agreement, which is estimated to be $15,000.  (*Id.* § 2.20.)  Finally, the Association and Solar agree to pay up to $5,000 for a Neutral Expert to consult and opine regarding the fair market value of admission prices of the 2017 and 2018 County Fairs, which will be used as a basis to compute the fifty-cent reduction required by the Settlement.  (*Id.* §2.20, 2.21)

## II. DISCUSSION

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  However, Federal Rule of Civil Procedure 23(e) first "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).  In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted).

### A. Class Certification

Before granting preliminary approval of a class-action settlement, the Court must first determine whether the proposed class can be certified.  *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) (indicating that a district court must apply

"undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees).

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). In order to justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). In this regard, Rule 23 contains two sets of class-certification requirements set forth in Rule 23(a) and (b). *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). "A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met." *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008).

"Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) questions of law or fact exist that are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Otsuka*, 251 F.R.D. at 443 (citing Fed. R. Civ. P. 23(a)). "A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication." *Id.* (citing Fed. R. Civ. P. 23(b)).

/ / /

In the context of a proposed settlement class, questions regarding the manageability of the case for trial are not considered. *E.g.*, *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (citing *Amchem Prods., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.")).

The Court considers the threshold issue of whether the Settlement Class is ascertainable and each of prerequisites for certification in turn below.

### 1. Ascertainability

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). Certification is improper if there is "no definable class." *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007).

"A class should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor v. Boeing N. Am. Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotation marks omitted). "A class is ascertainable if it is defined by 'objective criteria' and if it is 'administratively feasible' to determine whether a particular individual is a member of the class." *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 2860995, at *4 (N.D. Cal. June 23, 2014). However, "[a] class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, No. C 08-00732, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010). "It is not fatal for a class definition to require some inquiry into individual records, as long as the inquiry is not so daunting as to make the class definition insufficient." *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 673 (N.D. Cal. 2011) (internal quotation marks omitted).

Here, the Court notes that there are issues with ascertainability because the Settlement Class Members' contact information as not retained by the Association or Solar and is not available. *See e.g. Rowden v. Pacific Parking Systems*, 282 F.R.D. 581, 587 (C.D. Cal. 2012). To solve this issue, the parties propose an allocation of settlement proceeds which yields a reduction in admission fees for those most likely to be Class Members – future fairgoers. (Settlement Agreement § 9.2(A).) The Court finds this solution is acceptable. Thus, the Court concludes the Settlement Class is ascertainable.

### 2.   Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer." *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).

Here, it is estimated that Defendant generated approximately 100,000 defective receipts during the applicable class period, from September 10, 2010 through the date of preliminary approval. (ECF No. 33-1 at §24.) The Court therefore finds joinder of all class members is impracticable for the purposes of Rule 23(a)(1) and the numerosity requirement is satisfied. *See Celano*, 242 F.R.D. at 549.

### 3.   Commonality – Rule 23(a)(2)

Under Rule 23(a)(2), the named plaintiff must demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). However, "[a]ll questions of fact and law need not be common to satisfy this rule." *Hanlon*, 150 F.3d at 1019. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

In this case, the Class Members all seek the same remedies under FACTA, and all the claims relate to the Association's alleged failure to truncate the expiration dates of Class Members' credit and debit cards during the class period.  Thus, it appears the same factual predicates apply to every Class Member.  Given this context, the Court finds there are questions of law and fact common to the Settlement Class Members. Accordingly, the commonality requirement is satisfied.

### 4. Typicality – Rule 23(a)(3)

To satisfy Rule 23(a)(3), the named plaintiff's claims must be typical of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).  "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Here, Plaintiff's and the unnamed Class Members' claims arise from the same alleged conduct of the Association and Solar.  Plaintiff alleges the Association failed to truncate the expiration date of her credit card number on the printed receipt that she was provided at the point of sale.  Plaintiff alleges this violates FACTA and subjects the Association and Solar to statutory penalties.  This is the same claim alleged on behalf of the Class Members.  The typicality requirement is therefore satisfied.

/ / /

/ / /

### 5. Adequacy – Rule 23(a)(4)

Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Here, there is no indication that Plaintiff and her counsel have a conflict of interest with the Settlement Class Members, and they appear to have vigorously investigated and litigated this action. (*See* ECF No. 33-1 ¶¶ 14-15, 19-26.) Thus, the interests of Plaintiff and the Settlement Class Members are aligned. In addition, Plaintiff's counsel are qualified in class-action litigation. They have handled numerous class actions focused on consumer protection, including matters involving FACTA. (*Id.* ¶ 5-6, ECF No. 33-2 at 1-9.) Consequently, the Court finds Plaintiff and her counsel adequately represent the unnamed class members.

### 6. Predominance and Superiority – Rule 23(b)(3)

#### (i) Predominance

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1022). The focus of the inquiry is not the presence or absence of commonality as it is under Rule 23(a)(2). Instead, the predominance requirement ensures that common questions "present a significant aspect of the case" such that "there is clear justification"—in

terms of efficiency and judicial economy—for resolving those questions in a single adjudication. *Hanlon*, 150 F.3d at 1022; *see also Vinole*, 571 F.3d at 944 ("[A] central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy.")

Here, the Court finds a common issue predominates over any individual issue – specifically, whether the Association and Solar provided printed receipts that violated FACTA. Accordingly, the Court finds the predominance requirement is met.

### (ii) Superiority

"Plaintiffs must also demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Otsuka*, 251 F.R.D. at 448 (quoting Fed. R. Civ. P. 23(b)(3)). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). The following factors are pertinent to this analysis:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

A class action is a superior method for adjudicating the claims presented in this case because of the relatively low value of the average Class Member's potential action against the Association and Solar. FACTA provides for statutory damages in the amount of not less than $100 and not more than $1,000 for each violation. 15 U.S.C. § 1681n(a)(1)(A). The cost a Settlement Class Member would have to incur

to bring an individual action against the Association and Solar very likely outweighs the prospective recovery of the class member. This disparity between litigation costs and prospective recovery provides "the most compelling rationale for finding superiority in a class action." *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 468–69 (S.D. Cal. 2014) (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996)). Moreover, the Court is unaware of any other litigation regarding the claims at issue involving the Association and Solar, and the parties agree it is desirable to resolve the class members' claims in this forum. Thus, the superiority requirement is satisfied.

For the foregoing reasons, the Court provisionally finds the prerequisites for a class action under Rule 23 of the Federal Rules of Civil Procedure have been met for the Settlement Class.

### B. Preliminary Fairness Determination

Having certified the Settlement Class, the Court must next make a preliminary determination of whether the class-action settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(2). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. A court may not "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.* Relevant factors to this determination include, among others:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class-action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.*; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious,

informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citations omitted).

Here, the proposed Settlement complies with all of these requirements. The Court addresses the relevant factors in further detail below.

### 1. Strength of the Plaintiffs' Case and Risk of Further Litigation

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). As explained by the Supreme Court, "[n]aturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).

Although each party here strongly believes in the merits of the party's side of the case, the parties have agreed to settle the matter in light of the risks to both sides in continuing this matter through trial. (*See* Settlement Agreement § 1.) The Court agrees with the parties that the proposed Settlement eliminates litigation risks and ensures that the Settlement Class Members receive some compensation for their claims, and this factor weighs in favor of approving the Settlement.

### 2. Amount of the Proposed Settlement

The Settlement provides for a economic relief in the form of Reduced Admission Prices (up to a $750,000 cap) and a Common Fund of $150,000. (Settlement Agreement § 9.) Offsetting this amount are anticipated notice and claims administration expenses in the amount of $15,000; an incentive award up to $5,000; a Neutral Expert fee in the amount of $5,000; and attorneys' fees up to $150,000. (*Id.*

§9.2(B); 2.20.)

Based on the Association's estimate of the number of allegedly defective receipts, Plaintiff alleges she and the Class are entitled to minimum statutory damages of $10,000,000. Thus, given the potential for statutory damages per Settlement Class Member, the amount of the Settlement Fund is only a small percentage of the potential recovery that might be available to the class at trial. Yet, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). However, as a result of this settlement, the Association has amended its practices so that the issue at the heart of this case – the failure to redact private information from consumers' credit and debit card receipts – will cease in the future. Moreover, given the structure of the settlement in the form of a reduced admission price, the amount of the settlement appears appropriate. Therefore, under the circumstances, the Court concludes that the amount offered in the Settlement weighs in favor of preliminary approval.

### 3. Extent of Discovery Completed and Stage of the Proceedings

The Court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement. *See Ontiveros v. Zamora,* 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution."). So long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998); *see also In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (explaining that a combination of investigation, discovery, and research conducted prior to settlement can provide sufficient information for class counsel to make an informed decision

about settlement).

This action has been pending for approximately a year, and the parties have engaged in pre-certification discovery. (ECF No. 33-1 at § 15.) The parties also participated in mediation with the Court through an Early Neutral Evaluation Conference, as well as held numerous follow-up meetings and negotiations for nearly four months afterwards. (*Id.*) Given the discovery conducted, the stage of the proceedings, and the evidence of significant arms-length negotiations, the Court concludes that this factor weighs significantly in favor of preliminary approval of the Settlement.

### 4. Experience and Views of Counsel

As mentioned above, Class Counsel have significant experience in handling class actions. (ECF No. 33-1 at 5.) For example, Class Counsel's firm has been involved in over 100 class actions. (ECF No. 33-2 at 1-9.) As for their opinions of the Settlement, Class Counsel believe the Settlement is desirable, fair, and beneficial to the Settlement Class. (ECF No. 33-1 ¶ 6.) "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Accordingly, giving the appropriate weight to Class Counsel's recommendation, the Court concludes that this factor also weighs in favor of approval.

### 5. Reaction of the Class to the Settlement

Plaintiff, aside from her own view, provides no evidence regarding any putative Settlement Class Members' reactions to the proposed settlement – presumably because no other class members have been informed of the proposed Settlement. The proposed Settlement Website Notice, Association Website Notice, and Publication Notice provide instructions as to how class members may exclude themselves from the Settlement, object to the Settlement, and request to appear at the Fairness Hearing. (ECF No. 33-2 at 45-52.) Accordingly, the Court will further consider this factor at the Fairness Hearing before granting final approval of the

Settlement.

On balance, the Court finds the Settlement falls within the range of reasonableness meriting possible final approval. The Court therefore preliminarily approves the Settlement and the terms and conditions set forth in the Settlement Agreement, subject to further consideration at the Fairness Hearing.

### C.  Proposed Class Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 12(c)(2)(B). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

Here, the proposed notices describe the litigation, the terms of the Settlement, and each class member's rights and options under the Settlement. (ECF No. 33-2 at 45-55.) As outlined above, the Claims Administrator will establish the Settlement Website containing the Website Notice, and Notice will be included on the Association's website. (ECF No. 35 § 10.2.) A Newspaper Publication will also be disseminated. (*Id.*) All of the notices will state the deadlines for opting out or objecting to the Settlement. (*Id.*)

Having reviewed the proposed class notices, the Court finds that the methods and contents of the notices comply with due process and Rule 23, are the best notice

practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled to notice of the Settlement. Therefore, the Court approves the form and content of the proposed notices to be provided to the Settlement Class Members as set forth in Section 10 of the Settlement Agreement and Exhibits 1 and 2 to the Settlement Agreement.

### III.   CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion for Preliminary Approval of Class Action Settlement. (ECF No. 33). Accordingly, the Court hereby **ORDERS** the following:

**1.** For purposes of this Order, the Court adopts and incorporates all definitions set forth in the Settlement Agreement unless a different definition is set forth in this Order.

**2.** The Court finds that the requirements of Rule 23 of the Federal Rules of Civil Procedure and other laws and rules applicable to preliminary settlement approval of class actions have been satisfied, and the Court preliminarily approves the settlement of this Action as memorialized in the Settlement Agreement, which is incorporated herein by this reference, as being fair, just, reasonable and adequate to the settlement Class and its members, subject to further consideration at the Final Fairness and Approval Hearing described below, and thus hereby:

   a.   conditionally certifies for purposes of implementing the Settlement Agreement the Settlement Class consisting of those persons who were issued an electronically printed debit and/or credit card receipt during the San Diego County Fair at the Del Mar Fairgrounds in violation of the truncation requirements of FACTA at any time between September 30, 2010 and the date of preliminary approval of [the Settlement] (the "Class");

   b.   appoints Plaintiff Gillian Brown as the representative of the Class; and

       c.     appoints Kenneth S. Gaines, Daniel F. Gaines, and Alex P. Katofsky of Gaines & Gaines, APLC as attorneys for the Class for purposes of settlement and finds for the purposes of settlement that these attorneys are qualified to represent the Class.

**3.**     A hearing (the "Final Fairness and Approval Hearing") shall be held on **May 11, 2017** at **3:30 p.m.** before the Honorable David H. Bartick in Courtroom 1D of the United States District Court for the Southern District of California, located at 221 W. Broadway, San Diego, California 92101.  At that time, the Court shall determine:

       a.     whether the proposed settlement of the Action on the terms and conditions provided for in the Settlement Agreement is fair, just, reasonable and adequate and should be finally approved;

       b.     whether judgment as provided in the Settlement Agreement should be entered herein; and

       c.     whether to approve Class Counsel's application for an award of attorneys' fees and costs and Plaintiff Brown's application for a service payment.  The Court may continue or adjourn the Final Fairness and Approval Hearing without further notice to members of the Class.

**4.**     The Court approves, as to form and content, the website notice attached to the Settlement Agreement as Exhibit 1, and the newspaper publication notice attached to the Settlement Agreement as Exhibit 2.  The Court finds that distribution of the website notice and newspaper publication notice in the manner set forth in this Order and the Settlement Agreement constitutes the best notice practicable under the circumstances, and constitutes valid, due and sufficient notice to all members of the Class, complying fully with the requirements of Rule 23 of the Federal Rules of Civil Procedure, the Constitution of the United States, and any other applicable laws.  The Class Notice and the notice program as set forth in the Settlement Agreement provide a means of notice reasonably calculated to apprise the Class Members of the pendency of the action and the proposed settlement, and thereby meet the

requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure, as well as due process under the United States Constitution and any other applicable law, and shall constitute due and sufficient notice to all Class Members entitled thereto.

**5.** The Court approves the selection of Simpluris, Inc. to be the Settlement Administrator. The Settlement Administrator will administer the applicable provisions of the Settlement Agreement, including, but not limited to, publishing and disseminating the Notice, maintenance of the website, and receiving and examining exclusion requests and objections from Class Members.

**6.** Notice shall include a newspaper publication notice, substantially in the form attached to the Settlement Agreement as Exhibit 2, in a newspaper of regional circulation in Southern California, published two times during the first 30 days following the Notice Deadline. The Court finds that, because not all Class Members can be identified from Defendant's records, this publication notice is the most practicable means to notify Class Members of the settlement, and satisfies the requirements of due process.

**7.** The Settlement Administrator will establish and maintain the Settlement Website dedicated to the Settlement called http://classactionsandiegocountyfair.com or similar, on which will be posted the Website Notice, a copy of the Settlement Agreement, this Preliminary Approval Order, the operative Complaint, the Motion for Preliminary Approval, the Motion for Attorneys' Fees, Costs and Incentive Award, the Motion for Final Approval, and any other materials the Parties agree to include. Additionally, there shall be included a Website Notice in a form substantially similar to the form attached to the Settlement Agreement as Exhibit 1. These documents shall be available on the Settlement Website beginning no later than the Notification Deadline and ending no earlier than thirty (30) calendar days after the last day of the 2018 San Diego County Fair unless the reduction cap described in Section 9.2(A) of the Settlement Agreement has been satisfied through reduction at the 2017 San Diego County Fair, under which circumstance the documents shall be available ending no later than

thirty (30) calendar days after the last day of the 2017 San Diego County Fair. The Settlement Administrator shall secure a URL for the Settlement Website proposed by Class Counsel and approved by the Association.

8. Notice shall also include a link to the Settlement Website and brief description of the Action (no more than two (2) sentences in length) on the landing page of the San Diego County Fair (www.sdfair.com) during the 60 calendar days following the Notice Deadline.

9. Class Members shall have sixty calendar (60) days following Notice, after which no one shall be allowed to object to the Settlement, exclude himself or herself from the Settlement, or seek to intervene in the Action. The timeliness of requests for exclusion shall be determined by valid postmark.

10. Plaintiff and Class Counsel shall file their Motion for an Award of Attorneys' Fees and Costs and a Class Representative Incentive Award no later than the Notice Deadline, and shall file their Motion for Final Approval of Class Action Settlement (which shall include any responses to Objections to the Settlement, a request for approval of the Settlement Administrator's fees, and a request for approval of the Neutral Expert's fees) no later than twenty (20) calendar days prior to the Final Approval Hearing.

11. The Court reserves the right to adjourn the date of the Final Fairness and Approval Hearing and any adjournment thereof without further notice to the members of the Class, and retains jurisdiction to consider all further applications arising out of or connected with the settlement. The Court may approve the settlement, with such modifications as may be agreed to by the parties to the settlement, if appropriate, without further notice to the Class.

IT IS SO ORDERED.

Dated: December 13, 2016

LOUISA S PORTER
United States Magistrate Judge