KENNETH S. GAINES, ESQ. SBN 049045
ken@gaineslawfirm.com
DANIEL F. GAINES, ESQ. SBN 251488
daniel@gaineslawfirm.com
ALEX P. KATOFSKY, ESQ. SBN 202754
alex@gaineslawfirm.com
SEPIDEH ARDESTANI, ESQ. SBN 274259
sepideh@gaineslawfirm.com
**GAINES & GAINES, APLC**
27200 Agoura Road, Suite 101
Calabasas, California 91301
Telephone: (818) 703-8985
Facsimile: (818) 703-8984

Attorneys for Plaintiff Gillian Brown
and Proposed Class Counsel

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILLIAN BROWN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>22ND DISTRICT AGRICULTURAL ASSOCIATION, a State entity; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO: 15-cv-2578-DHB<br><br><u>CLASS ACTION</u><br><br>**NOTICE OF MOTION AND MOTION FOR AWARD OF REASONABLE ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE ENHANCEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      May 11, 2017<br>Time:      3:30 p.m.<br>Courtroom: 1D<br>Judge:     Hon. David H. Bartick |

1   PLEASE TAKE NOTICE that on May 11, 2017, at 3:30 p.m., or as soon
2   thereafter as the matter may be heard, in Courtroom 1D of the United States District
3   Court of the Southern District of California, located at 221 W. Broadway, San
4   Diego, California 92101, the Honorable Magistrate Judge David H. Bartick
5   presiding, Plaintiff Gillian Brown will and hereby does move this Court an order (1)
6   granting Class Counsel's application for an award of reasonable attorneys' fees in
7   the amount of $145,130.29 and reimbursement of out-of-pocket costs in the amount
8   of $4,869.71, and (2) approving an enhancement award for Class Representative
9   Gillian Brown in the amount of $5,000.   Defendant 22nd District Agricultural
10  Association (the "Association") and Third Party Defendant Solar On Set, LLC
11  ("Solar") do not oppose this motion.

12      The motion is based on this notice of motion and motion, the attached
13  memorandum of points and authorities, the Class Action Settlement Agreement and
14  Release, the Declaration of Daniel F. Gaines, the declaration submitted by the Class
15  Representative Gillian Brown, the pleadings and papers filed in this case, and any
16  oral argument this Court permits.

17

18  Dated:  January 25, 2017              GAINES & GAINES, APLC

19

20                                By:   /s/Alex P. Katofsky
21                                      ALEX P. KATOFSKY
22                                      Attorneys for Plaintiff
                                        Gillian Brown and the Proposed Class
23
24
25
26
27
28

1
2

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

3   I.    INTRODUCTION ........................................................................... 1

4
5   II.   PROCEDURAL HISTORY AND SUMMARY OF
      RELEVANT FACTS ..................................................................... 2

6       A.    The Complaint and Claims Alleged.......................................... 2

7       B.    Class Counsel's Work Litigating and Settling the Action.................. 2

8
9       C.    The Named Plaintiff's Participation in the Action ............................. 5

10      D.    Preliminary Approval of the Settlement ............................................. 6

11  III.  TERMS OF THE SETTLEMENT .................................................... 6

12      A.    Settlement Class and Class Period ..................................... 6

13
14      B.    Settlement Fund and Settlement Payments to the
         Class Members ..................................................................... 9

15      C.    The Stipulation of Settlement Clearly States the Attorneys'
16           Fees and Costs....................................................................... 8

17      D.    Class Representative's Enhancement Award ........................................ 8

18  IV.  LEGAL ARGUMENT ...................................................................... 9

19      A.    Plaintiff's Released Claims Provide for an Award of
20           Attorneys' Fees and Costs ................................................................ 9

21      B.    Plaintiff Seeks a Fee Award under the Percentage of the
22           Common Fund........................................................................... 9

23           1.    The Requested Fee is Reasonable Under the Common
24                 Fund Doctrine ............................................................ 11

25               a.    The Result Obtained...................................... 11

26               b.    Counsel's Efforts, Experience and Skill ....................... 14

27
28

# TABLE OF CONTENTS
### (continued)

**Page**

         c.    Complexity and Novelty of the Issues ...........................14

         d.    The Risks Of Nonpayment Assumed By Counsel.........15

         e.    Size of the Total Settlement Value................................15

  C.    A Cross-Check under the Lodestar Method Confirms the Reasonableness of the Fee Requested .................................16

      1.    Class Counsel's Hourly Rates are Reasonable.........................17

      2.    Class Counsel's Hours are Reasonable ...................................18

      3.    A Multiplier Is Warranted Here.................................................19

  D.    Class Counsel's Request for Costs is also Reasonable.......................19

  E.    An Enhancement Award for the Class Representative is Reasonable ........................................................20

V.    CONCLUSION ...........................................................21

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,*
    421 U.S. 240 (1975) ....................................................................................... 9

*Behrens v. Wometco Enters., Inc.,*
    118 F.R.D. 534 (S.D. Fla. 1988) ................................................................. 12

*Boeing Co. v. Van Gemert,*
    444 U.S. 472 (1980) ............................................................................. 10, 11

*Camacho v. Bridgeport Financial, Inc.,*
    523 F.3d 973 (9th Cir. 2008) ........................................................................ 17

*City of Burlington v. Dague,*
    505 U.S. 557 (1992) ...................................................................................... 16

*Cook v. Niedert,*
    142 F.3d 1004 (7th Cir. 1998) ...................................................................... 20

*Craft v. Cnty. of San Bernardino,*
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................ 15

*Glass v. UBS Fin. Servs., Inc.,*
    331 F. App'x 452 (9th Cir. 2009) ................................................................. 16

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ................................................................ 11, 16

*Harris v. Marhoefer,*
    24 F.3d 16 (9th Cir. 1994) ............................................................................ 19

*Hensley v. Eckerhart,*
    461 U.S. 424, 103 S.Ct. 1933 (1983) .......................................................... 12

*In re Activision Sec. Litig.,*
    723 F. Supp. 1373 (N.D. Cal. 1989) ............................................................ 11

*In re Bluetooth Headset Products Liab. Litig.,*
    654 F.3d 935 (9th Cir. 2011).......................................................... 9, 10, 12, 16

1
2

# TABLE OF AUTHORITIES
### (continued)

3

Page

4

### Federal Cases (cont'd)

5
6

*In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*,
    109 F.3d 602 (9th Cir. 1997)..........................................................................16

7
8

*In re GNC Shareholder Litig*,
    668 F. Supp. 450 (W.D. Pa. 1987). ...............................................................19

9
10

*In re Heritage Bond Litig.*,
    2005 U.S. Dist. LEXIS 13627 (C.D. Cal. 2005)......................................13, 14

11
12

*In re Heritage Bond Litig.*,
    No. 02-ML-1475-DT(RCX), 2005 WL 1594389
    (C.D. Cal. June 10, 2005)...............................................................................10

13
14

*In re King Resources Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. 1976) ..................................................................12

15
16

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 458 (9th Cir. 2000)...........................................................................20

17
18

*In Re Omnivision Technologies, Inc.*,
    2008 WL 123936 (N.D. Cal. 2008)..................................................................13

19
20

*In re United Energy Corp. Sec. Litig,.*
    MDL No. 726, 1989 WL 73211 (C.D. Cal. 1989) ..........................................19

21
22

*Ingram v. The Coca-Cola Co.*,
    200 F.R.D. 685 (N.D. Ga. 2001) .....................................................................20

23
24

*Ko v. Natura Pet Products, Inc.*,
    No. C 09-02619 SBA, 2012 WL 3945541
    (N.D. Cal. Sept. 10, 2012).............................................................................10

25
26

*Lobatz v. U.S. Cellular of Cal., Inc.*,
    222 F.3d 1142 (9th Cir. 2000).........................................................................18

27
28

*Matter of Cont'l Illinois Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992)...........................................................................16

1

# TABLE OF AUTHORITIES
## (continued)

2

3

**Page**

4

## Federal Cases (cont'd)

5

6

*Paul, Johnson, Alston & Hunt v. Graulty,*
    886 F.2d 268 (9th Cir. 1989) ..................................................... 1, 10

7

8

*Radcliffe v. Experian Info. Solutions Inc.,*
    715 F.3d 1157 (9th Cir. 2013) ......................................................... 20

9

10

*Rodriguez v. W. Publ'g Corp.,*
    563 F.3d 948 (9th Cir. 2009) ......................................................... 20

11

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) ............................................... 10, 11, 16

12

13

*Van Vranken v. Atl. Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) ........................................... 15, 20

14

15

*Vasquez v. Coast Valley Roofing, Inc.,*
    266 F.R.D. 482 (E.D. Cal. 2010) .............................................. 10, 11

16

17

*Vedachalam v. Tata Consulting Serv. Ltd.,*
    No. C 06–0963 CW, 2013 WL 3941319
    (N.D. Cal. July 18, 2013) ............................................................ 17

18

19

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ................................................ passim

20

21

*Webb v. Board of Educ.,*
    471 U.S. 234 (1985). .................................................................. 18

22

23

*Wren v. RGIS Inventory Specialists,*
    No. C-06-05778 JCS, 2011 WL 1230826
    (N.D. Cal. Apr. 1, 2011) .............................................................. 10

24

25

26

27

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

### State Cases

*Serrano v. Priest* (*"Serrano IV"*),
    32 Cal.3d 621 (1982)..........................................................................18

*Wershba v. Apple Computer, Inc.*,
    91 Cal.App.4th 224 (2001).............................................................19

### Statutes

15 United States Code
    § 1681(c)(g).................................................................................1, 9
    § 1681n........................................................................................9
    § 1681n(a)(1)(A).........................................................................13
    § 1681n(a)(3)..............................................................................8

### Treatises

4 *Newberg on Class Actions* 4th (4th ed. 2002)
    § 14.6........................................................................................19

*Newberg*, Attorney Fee Awards,
    § 2.19 (1987) ...........................................................................19

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

Plaintiff Gillian Brown ("Plaintiff" or "Brown") moves this Court for an award of reasonable attorneys' fees and costs for Class Counsel's work in achieving a settlement package valued at $925,000 for the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681(c)(g) class claims alleged against Defendant 22nd District Agricultural Association ("Defendant" or "Association"), which the Court preliminarily approved on December 13, 2016.  *See* Docket ("Dkt.") No. 38.  Plaintiff seeks an award of $145,130.29 for Class Counsel's attorneys' fees, which represents 16% of the total settlement fund, and reimbursement of $4,869.71 of Class Counsel's out-of-pocket costs incurred litigating this action, both amounts as set forth in the Class Action Settlement Agreement and Release ("Stipulation of Settlement").[1]   The common fund methodology is appropriate because the settlement class members will receive an ascertainable monetary benefit upon the Court's final approval of the proposed settlement, which enables the Court to determine a reasonable, percentage-based fee with "some exactitude."  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).  The requested fee amount falls well below the presumptively reasonable "benchmark" within the Ninth Circuit.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

A lodestar "cross-check" confirms the reasonableness of Plaintiff's fee request.  Class Counsel's hourly rates are reasonable in light of their significant experience, skill, and expertise, as well as fee awards by judges throughout California.  Declaration of Daniel F. Gaines ("Gaines Decl.") at ¶¶ 2-5, 36-48.  The

---

[1] The Class Action Settlement Agreement and Release is attached as Exhibit B to the Declaration of Daniel F. Gaines submitted herewith ("Gaines Decl.").  All "Ex." references are to exhibits to the Gaines Declaration unless otherwise stated.

1   number of hours expended by Class Counsel is also reasonable.  Class counsel has

2   provided a detailed summary of Class Counsel's hours spent litigating this action

3   and hourly rates.  *Id.* at ¶¶ 36-48; Exhibit C.

4        Plaintiff also seeks the Court's approval of a modest enhancement award to

5   the Class Representative for her contributions to the litigation of this matter,

6   including initiating this lawsuit on behalf of the settlement class, safeguarding class

7   members' interests throughout the litigation, and assisting in the settlement,

8   including attendance at a full-day early neutral evaluation conference in San Diego.

9   Plaintiff seeks payment of the reasonable amount of $5,000 for the Class

10  Representative, as set forth in the Stipulation of Settlement (Ex. B at ¶ 6.2) in

11  acknowledgment of her time and effort seeking enforcement of her and the class'

12  rights, including seeking experienced counsel, participating in the investigation and

13  preparation of the complaint, and her risk in bringing forth class claims against the

14  Association.

15  **II. PROCEDURAL HISTORY AND SUMMARY OF RELEVANT FACTS**

16       **A. <u>The Complaint and Claims Alleged</u>**

17       On September 30, 2016, Plaintiff initiated the Action by filing a putative

18  class action Complaint in the Superior Court of the State of California, County of

19  San Diego entitled *Gillian Brown v. 22nd District Agricultural Association*, Case

20  No. 37-2015-00033027-CU-MC-CTL. The Complaint alleges that the Association

21  violated FACTA by printing a receipt containing the expiration date of Plaintiff's

22  credit card used in a transaction at the 2015 County Fair.  Gaines Decl. at ¶ 6; Stip.

23  at ¶ 1.4.

24       The Association answered the Complaint and asserted various affirmative

25  defenses in the State Court on November 16, 2015.  Gaines Decl. at ¶ 7; Stip. at ¶

26  1.5.

27

28

1     On November 17, 2015, the Association removed the Action to United States

2  District Court for the Southern District of California.  Gaines Decl. at ¶ 8; Stip. at ¶

3  1.6.

4     On February 8, 2016, the Association filed its Third Party Complaint ("Third

5  Party Complaint") against Solar alleging the following causes of action against

6  Solar: Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair

7  Dealing, Express Contractual Indemnity, Comparative Indemnity, Equitable

8  Indemnity, and Declaratory Relief.  Gaines Decl. at ¶ 9; Stip. at ¶ 1.7.

9     The Association denies all material allegations of the Complaint.  The

10  Association specifically disputes that it printed a non-compliant receipt pursuant to

11  FACTA, either willfully or negligently, at any relevant time to Plaintiff or putative

12  class members, disputes that it violated any provision of the FCRA, and disputes

13  that Plaintiff and putative class members are entitled to any relief from the

14  Association.  The Association further contends that the Action would not be

15  amenable to class certification if class certification were sought by Plaintiff and

16  opposed by the Association.  Gaines Decl. at ¶ 10; Stip. at ¶ 1.8.

17     The Association further alleges that, had any violations of FACTA or the

18  FCRA occurred at the County Fair, which it expressly denies, such violations were

19  the direct result of actions and omissions of Solar.  Gaines Decl. at ¶ 11; Stip. at ¶

20  1.9.

21     Solar denies all material allegations of the Third Party Complaint. Solar

22  specifically disputes that Solar breached a contract with the Association, disputes

23  that Solar breached an implied covenant of good faith and fair dealing with the

24  Association, disputes that Solar violated any provision of FACTA or the FCRA,

25  and disputes that the Association, Plaintiff, and putative class members are entitled

26  to any relief from Solar.  Gaines Decl. at ¶ 12; Stip. at ¶ 1.10.

27  \\

28  \\

### B. <u>Class Counsel's Work Litigating and Settling the Action</u>

The Parties recognized and acknowledged the expense and length of continued proceedings necessary to prosecute the claims through trial, possible appeals and ancillary actions. The Parties also have taken into account the uncertain outcome and the risk of any litigation, especially in multi-party actions such as this proceeding, as well as the difficulties and delays inherent in such litigation. The Parties also are mindful of the potential problems of proof in establishing the claims and defenses asserted in this proceeding and the uncertainty of whether and to what extent the Association and Solar have insurance coverage or other available funding in the event of any success in this litigation. Gaines Decl. at ¶ 13; Stip. at ¶ 1.11.

The Settlement Agreement resulted from, and is the product of, extensive, good faith and arm's length settlement negotiations over many months, including numerous telephonic and in-person negotiations, all of which followed the exchange of informal discovery and factual and legal analysis by the Parties regarding the claims alleged. The Parties participated in mediation vis-à-vis the District Court's Early Neutral Evaluation conference held on March 10, 2016 ("ENE"), as well as follow-up meetings and negotiations for nearly four months thereafter, to reach a resolution in principle. The Parties also participated in numerous telephone calls prior to the ENE in order to lay the ground work for mediation. The Parties submitted detailed ENE statements to the Honorable David H. Bartick setting forth their respective views as to the strengths of the case. Gaines Decl. at ¶ 14; Stip. at ¶ 1.12.

At all times, the Parties' settlement negotiations have been non-collusive, adversarial, and at arm's length. Gaines Decl. at ¶ 15.

Discussions between counsel for the Parties, informal discovery, as well as the investigation and evaluation of the claims of Plaintiff by the Parties, have permitted each side to assess the relative merits of the claims and the defenses to

those claims.   The Parties agree that the above-described investigation and evaluation, as well as the information exchanged during settlement negotiations and mediation, are more than sufficient to assess the merits of the respective Parties' positions and to compromise the issues on a fair and equitable basis.  Gaines Decl. at ¶ 16.   Based on their own independent investigations and evaluations, Class Counsel is of the opinion that the consideration and terms of the Settlement as described herein, considering the risk of loss on class certification, the risk of loss on the merits, and the risk of a reduction in any damages sought or awarded, is fair, reasonable, and adequate in light of all known facts and circumstances, and is in the best interests of the Class.  Gaines Decl. at ¶ 17.

Class Counsel drafted a detailed, formalized settlement agreement and exhibits and negotiated the language and terms with Defense Counsel.  Gaines Decl. at ¶ 18; *see also*, Ex. B.

Class Counsel also drafted and filed the motion for preliminary approval of the proposed class settlement and supporting papers, which were filed on September 8, 2016.  Gaines Decl. at ¶ 19; Dkt. No. 35.

Class Counsel expects to spend significant additional time working with the settlement administrator through the conclusion of the settlement administration process, moving for final approval of the settlement, attending the final fairness hearing, and concluding the settlement administration.  Gaines Decl. at ¶ 20.

## C. The Named Plaintiff's Participation in the Action

Plaintiff Brown has actively participated in the litigation of this matter.  Prior to bringing this action, Plaintiff Brown provided substantive information to Class Counsel regarding her claims.  Before the complaint was filed on September 30, 2015, Plaintiff Brown discussed her claims and the circumstances surrounding her transactions with Defendant with her counsel.   Declaration of Gillian Brown ("Brown Decl.") at ¶¶ 4-5; Gaines Decl. at ¶ 51.

After the complaint was filed, Plaintiff Brown regularly communicated with Class Counsel regarding the progress of the litigation and the settlement.  Plaintiff assisted in the discovery process and attended the ENE.  Brown Decl. at ¶¶ 9-10; Gaines Decl. at ¶ 52.

### D. <u>Preliminary Approval of the Settlement</u>

On December 13, 2016, the Court granted preliminary approval of the settlement.  Dkt. No. 38.

The notice procedure set forth in the Stipulation of Settlement and approved by the Court's preliminary approval order requires that notice of the class settlement be provided in three ways: publication on the Internet via a settlement website, a link to the settlement website on the Association's website, and publication on two separate occasions in a regional newspaper in San Diego.  *See* Ex. B at ¶ 10.2.

Accordingly, Simpluris, the Court-approved settlement administrator, will publish the settlement website.  Ex. B at ¶ 10.2(A).  Also, as required by the preliminary approval order, Simpluris will cause the Notice to appear in the a regional newspaper, on two separate occasions, in the manner required by the Court's order.  Ex. B at ¶ 10.2(C).

Pursuant to the Preliminary Approval Order, Class Counsel is required to file this motion for attorneys' fees, reimbursement of costs, and a service payment to the Class Representative no later than the notice deadline (January 27, 2017).  As such, no class member participation data is available as of the date of this filing. Gaines Decl. at ¶ 25.

### III.   TERMS OF THE SETTLEMENT

#### A. <u>The Settlement Class</u>

The Stipulation of Settlement defines the Settlement Class as follows:

> [T]hose persons who were issued an electronically printed debit and/or credit card receipt during the San Diego County Fair at the Del Mar Fairgrounds in

> violation of the truncation requirements of FACTA at any time between September 30, 2010 and the date of preliminary approval of [the Settlement].

Ex. B at ¶ 2.31.

The number of Class Members, while not precisely known, is likely more than 100,000 based on an analysis used by the Parties.  Ex. B.

### B. <u>Economic Relief</u>

The economic relief provided in the Settlement is as follows:

*The Reduced Admission Prices*.  Each admission entrance fee for the 2017 San Diego County Fair (subject to a $750,000 total reduction cap) shall be reduced fifty (50) cents from the then-current fair market value of such admission prices as determined by the Neutral Expert or as otherwise agreed upon between Class Counsel and the Association and the Association's Counsel.  To the extent the reduction cap has not been met through the 2017 San Diego County Fair fee reduction, each admission entrance fee for the 2018 San Diego County Fair (subject to a $750,000 total reduction cap, inclusive of the previous year reduction) shall be reduced *pro rata* based on a calculation of the expected 2018 attendance and the remaining amount under the reduction cap.  The Neutral Expert shall conduct its analysis and provide its recommendations no later than the Opt-Out and Objection Deadline, and the final agreed upon pricing for the 2017 San Diego County Fair shall be submitted to the Court in connection with the Motion for Final Approval.  Stip. at ¶ 9.2(A).

*The Common Fund*.  The Association and Solar shall also pay a Common Fund of exactly $175,000 ($170,000 by the Association and $5,000 by Solar) which shall be used to compensate (1) the Settlement Administrator for its services in providing publication and website notice and other settlement administration services (as detailed herein), (2) Plaintiff Gillian Brown for an incentive award (subject to Court approval), (3) Class Counsel for their attorneys' fees and costs

1   (subject to Court approval), and (4) the Neutral Expert described above.  Any

2   unawarded or unrequested portion of the Common Fund shall be paid to a privacy

3   protection-related *cy pres* recipient to be proposed to the Court in connection with

4   the Motion for Final Approval.[2]  Stip. at ¶ 9.2(B).

### C. The Stipulation of Settlement Clearly States the Attorneys' Fees and Costs

6          Attorneys' fees and costs are recoverable under FACTA (15 U.S.C. §

7   1681n(a)(3)), and Defendant and Solar have agreed to pay Plaintiff's counsel Court

8   awarded attorneys' fees and costs, not to exceed $150,000, without opposition –

9   approximately 16% of the total consideration to be paid under the Settlement (a

10  total of $925,000, comprised of $750,000 in admission price reductions, $150,000

11  in attorneys' fees and costs, $5,000 enhancement to the Class Representative,

12  $15,000 in administration expenses, and $5,000 to the Neutral Expert), and well

13  below the Ninth Circuit common fund attorney fee benchmark of 25%.  Stip. at ¶¶

14  2.20; 6.1.   The fee is intended to compensate Class Counsel for the benefits

15  achieved for the class, the efficient and fair resolution of the class claims, the risk

16  of taking on a complex class action on a contingency basis, the preclusion of

17  accepting other work, plus all of the work that Class Counsel already performed in

18  litigating this action and will perform in securing approval of the settlement,

19  making sure that the settlement is fairly administered and implemented, and

20  obtaining dismissal of the action.  Gaines Decl. at ¶ 34.

### D. Class Representative's Enhancement Award

22          The Stipulation of Settlement provides for a modest enhancement award for

23  the named Plaintiff and Class Representative, subject to the Court's approval.

---

[2] The Association represents and warrants that its adult admission entrance fees between 2005 and 2016 are as stated in Exhibit 3 to the Settlement.   The Association also represents that the attendance at the 2015 County Fair was no fewer than 1.5 million people.

1  Gaines Decl. at ¶ 50.  Plaintiff Brown requests an enhancement award of $5,000
2  and has provided a declaration, submitted with this brief, explaining her efforts in
3  the litigation and settlement of this action.  *See* Declaration of Gillian Brown.

4  **IV.   LEGAL ARGUMENT**

5  **A.  Plaintiff's Released Claims Provide for an Award of Attorneys' Fees and Costs**

6      The Settlement Stipulation sets forth the claims to be released by Plaintiff
7  and the participating Class Members through the Settlement.  The claims to be
8  released include Plaintiff's and participating Class Members' claims under FACTA,
9  15 U.S.C. § 1681c(g), which is subject to the attorneys' fees and costs provision of
10  15 U.S.C. § 1681n(a)(3).  *See id.*  Section 1681n of FACTA provides that "[a]ny
11  person who willfully fails to comply with any requirement imposed under this
12  subchapter with respect to any consumer is liable to that consumer . . ., in the case
13  of any successful action to enforce any liability under this section, the costs of the
14  action together with reasonable attorney's fees as determined by the court."  15
15  U.S.C. § 1681n(a)(3).

16      Therefore, the statutory provisions included in the released claims set forth in
17  the Stipulation of Settlement support an award of attorneys' fees and costs in
18  relation to the settlement of the Plaintiff's and Class Members' claims.

19  **B.  Plaintiff Seeks a Fee Award Under the Percentage of the Common Fund**

20      District Courts may award attorneys' fees and costs to a prevailing plaintiff
21  where "(1) fee shifting is expressly authorized by the governing statutes; . . . or (3)
22  the successful litigants have created a common fund for recovery or extended
23  substantial benefit to the class." *In re Bluetooth Headset Products Liab. Litig.*, 654
24  F.3d 935, 941 (9th Cir. 2011) ("*In re Bluetooth*") (citing *Alyeska Pipeline Serv. Co.
25  v. Wilderness Soc'y*, 421 U.S. 240, 275 (1975)).  In the class action context, courts
26  generally award attorneys' fees and costs pursuant to the common fund or statutory
27  fee-shifting methodologies.  *In re Bluetooth*, 654 F.3d at 941.  Where there is a

common fund, "the primary basis of the fee award remains the percentage method." *Vizcaino*, 290 F.3d at 1050; *In re Bluetooth*, 654 F.3d at 942.  The Ninth Circuit has consistently awarded attorneys' fees under the common fund method, reasoning that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).  "The common fund doctrine is properly applied, however, only if (1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefiting." *Paul, supra*, 886 F.2d at 271 (internal quotations omitted). These requirements are met where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum [settlement] recovered on his behalf." *Id.*, quoting *Boeing*, 444 U.S. at 478-79.

In the Ninth Circuit, 25% of the common fund represents the "benchmark." *Vizcaino*, 290 F.3d at 1048-50.  The 25% benchmark is considered presumptively reasonable and can be adjusted upward or downward to account for any unusual circumstances in a particular case.  *In re Bluetooth*, 654 F.3d at 942; *Ko v. Natura Pet Products, Inc.*, No. C 09-02619 SBA, 2012 WL 3945541, at *14-15 (N.D. Cal. Sept. 10, 2012) (recognizing that the Ninth Circuit considers 25% to be "presumptively reasonable").   The benchmark may be adjusted upward or downward based on several factors, including: (1) the results achieved; (2) the risk of litigation; (3) the skill required; (4) the quality of work; (5) the contingent nature of the fee and the financial burden; and (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1048-50; *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *27-28 (N.D. Cal. Apr. 1, 2011); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) .   In the settlement approval context, the class members' reaction to the requested fee also is a relevant factor.  *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005

WL 1594389, at *15 (C.D. Cal. June 10, 2005) ("absence of objections from the class is also a factor in determining the proper fee award"). The "usual range" of common fund awards is 20-30%. *Vizcaino*, 290 F.3d at 1047-50.

### 1.    The Requested Fee Is Reasonable Under the Common Fund Doctrine

Class Counsel respectfully requests that the Court approve the requested fees and costs to be paid in this action. Class Counsel seeks an award of 16% of the total value of the common fund. Courts have long recognized the "common fund" or "common benefit" doctrine, under which attorneys who create a common fund or benefit for a group of persons may be awarded their fees and costs to be paid out of the fund. *See e.g.*, *Hanlon*, 150 F.3d at 1029; *Staton,* 327 F.3d at  972 ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole," quoting *Boeing Co.,* 444 U.S. at  478 ); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989). Here, the Stipulation of Settlement sets forth a specific lump sum allocation to the Class (through $750,000 in discounted admission prices to the 2017 and, potentially, 2018 County Fairs). In this context, the percentage of common fund doctrine appropriate.

Where the settlement applies distribution formulas by which each class member who submits a valid claim will receive a mathematically ascertainable payment, application of the percentage of common fund doctrine is appropriate. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D.Cal.2010). Such an allocation is analogous to the compensation structure here, where those persons who elect to attend the 2017 and 2018 County Fairs will receive a discount off the admission prices.

In the Ninth Circuit, the benchmark for percentage of recovery awards is 25 percent of the total settlement award, which may be adjusted up or down. *Hanlon*, 150 F.3d at 1029; *Ross v. U.S. Bank Nat'l Ass'n*, No. C 07–02951 SI, 2010 WL 3833922, at *2 (N.D.Cal. Sept. 29, 2010) (stating selection of benchmark must be

1   based on all circumstances of the case).  In "megafund" cases of $50–100 million,

2   fees more commonly will be under the 25 percent benchmark in this Circuit. *Lopez*

3   *v. Youngblood*, No. CV–F–07–0474 DLB, 2011 WL 10483569, at *13 (E.D.Cal.

4   Sept.2, 2011).  In contrast, in cases under $10 million, the awards more frequently

5   will exceed the 25 percent benchmark.  *Id.*

6       Here, counsel's requested 16 percent award falls well below the 25 percent

7   benchmark.  Factors that courts consider in awarding attorneys' fees (and which

8   may justify departure from the benchmark) include: (1) the result obtained; (2)

9   counsel's efforts, experience, and skill; (3) the complexity of the issues; (4) the risks

10  of nonpayment assumed by counsel; (5) the reaction of the class; (6) non-monetary

11  benefits, such as clarification of certain points of law; and (7) comparison with the

12  lodestar. *Vizcaino*, 290 F.3d at   1048–50.  Additional factors include whether

13  counsel receives a disproportionate distribution of the settlement, whether the

14  parties have agreed to a "clear sailing" arrangement, as here, whereby defendant

15  will not object to counsel's request for fees, and whether any fees not awarded will

16  revert to defendant rather than be added to the class fund. *Bluetooth*, 654 F.3d at

17  947.

18              a.      **The Result Obtained**

19      The result obtained is a significant factor to be considered in making a fee

20  award. *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933, 76 L.Ed.2d 40

21  (1983); *Wilcox v. City of Reno*, 42 F.3d 550, 554 (9th Cir.1994).   Courts have

22  consistently recognized that the result achieved is a major factor to be considered in

23  making a fee award.   *Hensley v. Eckerhart*, 461 U.S. 424, 436, 103 S.Ct. 1933,

24  1941 (1983) ("most critical factor is the degree of success obtained"); *In re King*

25  *Resources Co. Sec. Litig.*, 420 F. Supp. 610, 630 (D. Colo. 1976) ("the amount of

26  the recovery, and end result achieved are of primary importance, for these are the

27  true benefit to the client"); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-

28  48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before

1  trial is best measured by the benefit obtained."), *aff'd*, 899 F.2d 21 (11th Cir. 1990).

2  Indeed, many courts have recognized that the most critical factor for determining

3  the reasonableness of a fee award is the overall result and benefit to the class from

4  the settlement. *In Re Omnivision Technologies, Inc.,* 2008 WL 123936, at \*9 (N.D.

5  Cal. 2008); *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, at \*27 (C.D.

6  Cal. 2005).

7      Class Counsel achieved an exceptional result in this case, under all the

8  circumstances. The parties reached a non-collusive, arms-length settlement, with

9  the assistance of a respected Magistrate Judge.   Gaines Decl. at ¶¶ 28-33.

10  Moreover, while the Association did not dispute that it in fact printed prohibited

11  information on customer receipts, it strongly denied liability for statutory damages,

12  challenged Plaintiff's ability to certify the class and prove a willful violation of

13  FACTA.  Continued litigation of this lawsuit presented Plaintiff with substantial

14  legal risks of certifying the class, proving liability and defeating any appeals

15  relating to liability, damages or class certification.  *Id.*

16      The Settlement provides an excellent result for class members who suffered

17  no actual monetary loss as a result of the Association's conduct.  Class Counsel in

18  this case negotiated a settlement which ensures that Class Members (and others

19  who attend the 2017 and, potentially 2018 County Fairs) will receive a real cash

20  benefit.  The admission fee for all attendees of the 2017 (and potentially 2018)

21  County Fair shall be reduced fifty (50) cents from the then-current fair market value

22  of such admission prices as determined by the Neutral Expert or as otherwise

23  agreed upon between Class Counsel and the Association and the Association's

24  Counsel (up to $750,000 reduction cap).  Gaines Decl. at ¶ 32.

25      If the Action had not settled and, *if* Plaintiff succeeded in overcoming the

26  significant hurdle of class certification ***and*** proved the Association's liability at

27  trial, the class members would have been seeking FACTA statutory damages,

28  which are limited to between $100 and $1,000.  15 U.S.C. § 1681n(a)(1)(A).  The

1   Settlement provides the class members with a monetary payment and does so at this

2   juncture, avoiding the very real risk of not succeeding at the liability phase, which

3   likely would take years to determine.  These are significant benefits for the Class

4   Members and the efficiency with which this litigation was conducted and resolved

5   should be rewarded.  *See* Gaines Decl. at ¶ 33; *see also*, *e.g.*, *Heritage Bond*, 2005

6   U.S. Dist. LEXIS 13627, at *27-28 (median amounts recovered in settlement of

7   shareholder class actions were between 2%-3% of possible damages).

8               **b.     Counsel's Efforts, Experience and Skill**

9           The complexity of issues and skills required may weigh in favor of a

10   departure from the benchmark fee award.  *See In re Heritage Bond Litig.*, 2005

11   U.S. Dist. LEXIS 13555, at *66 (C.D. Cal. June 10, 2005) ("Courts have

12   recognized that the novelty, difficulty and complexity of the issues involved are

13   significant factors in determining a fee award").  Class Counsel is experienced in

14   complex class litigation including many FACTA and other consumer and

15   employment class actions.  *See* Gaines Decl. at ¶¶ 2-6, 28-33.  Class Counsel's

16   skills in developing the factual record and persuading the Association and Solar of

17   the costs and risks of prolonged litigation were helpful in achieving the Settlement.

18   Through their skill and experience, Class Counsel was able to obtain a settlement

19   that provides an outstanding result for the Class Members.

20               **c.     Complexity and Novelty of the Issues**

21           Class Counsel is unaware of any case where a defendant has been found

22   liable for a willful violation of FACTA.  Gaines Decl. at ¶ 34.  Class Counsel

23   therefore faced complex and novel issues concerning the interpretation of FACTA

24   and the requirements for a "willful" violation of FACTA and determining how best

25   to litigate the Action so that willful violations could be established on a class basis.

26   *Id.*

27   \\

28   \\

1

2    **d.    The Risks Of Nonpayment Assumed By Counsel**

3          From the outset of the case to the present, prosecution of this action has

4    involved significant financial risk for Class Counsel.  Gaines Decl. at ¶ 26.  Class

5    Counsel undertook this matter solely on a contingent basis, with no guarantee of

6    recovery.  Class Counsel has placed at risk their own resources to prosecute this

7    action with no guarantee of success.  Gaines Decl. at ¶¶ 26-27.  The risks of this

8    case are apparent in the expected battles over class certification and on the merits of

9    the action. Even if Plaintiff would have succeeded at certification, there was no

10   assurance that Plaintiff would succeed at trial.  Despite such challenges, Class

11   Counsel were able to persuade the Association and Solar that they faced significant

12   exposure such that they were willing to provide $925,000 in settlement value to

13   settle Plaintiff's claims.

14          Class Counsel's commitment to this litigation should not be overlooked in

15   assessing the reasonableness of the fee request.  Class Counsel was forced to forego

16   other employment in order to devote the time necessary to pursue this litigation.

17   *See* Gaines Decl. at ¶ 35.

18   **e.    Size of the Total Settlement Value**

19          The Parties have agreed to settle this matter for a settlement package valued

20   at $925,000.   Fee award percentages generally are higher in cases where the

21   common fund is relatively small, *i.e.*, below $10 million.  *Van Vranken v. Atlantic*

22   *Richfield Co.*, 901 F. Supp. 294, 297-98 (N.D. Cal. 1995) (percentages of more than

23   30% tended to be awarded in cases with class funds of less than $10 million); *Craft*

24   *v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) ("Cases

25   of under $10 Million will often result in fees above 25%.").  In settlements of this

26   size, fee percentages above the 25% benchmark are commonly awarded.  *Van*

27   *Vranken*, 901 F. Supp. at 297-98.  Notwithstanding the size of the total common

28   fund in this case, the 16% award requested is reasonable.

## C. A Cross-Check Under The Lodestar Method Confirms The Reasonableness Of The Fee Requested

When the common fund theory is applied, courts may "cross-check" the percentage of the common fund against the lodestar to ensure reasonableness of the fee award. *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) (approving the district court's "informal lodestar cross-check" for confirming the reasonableness of the percentage award); *Vizcaino*, 290 F.3d at 1050 (similar). The goal of both the lodestar and percentage of the common fund methodologies is the determination of a reasonable fee that is consistent with market rates. *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) ("Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion."); *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir. 1992) (a court should "determine what the lawyer would receive if he were selling his services in the market rather than being paid by court order."); *Vizcaino v. Microsoft Corp.*, 142 F. Supp. 2d 1299, 1304 (W.D. Wash. 2001) *aff'd*, 290 F.3d 1043 (9th Cir. 2002) (same).

A "lodestar" calculation multiplies the number of hours reasonably expended on the litigation by counsel's reasonable hourly rates. *In re Bluetooth*, 654 F.3d at 941. That lodestar calculation, however, is only the starting point for determining an appropriate fee. *Id.*; *Staton*, 327 F.3d at 965; *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992). A court may reduce or enhance the lodestar figure based on several "reasonableness" factors, including the following: 1) the quality of the representation; 2) the benefit obtained for the class; 3) the complexity and novelty of the issues presented; and 4) the risk of non-payment. *In re Bluetooth*, 654 F.3d at 942, citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). Here, Class Counsel seeks a small enhancement of the lodestar, yielding a multiplier of 1.56. The "reasonableness" factors are addressed in section

IV.B.1 above and militate in favor of awarding Class Counsel 16% of the common fund as a reasonable fee award.

Class Counsel will invest over 198 hours of attorney time litigating this class action. Gaines Decl. at ¶¶ 38. Class Counsel calculates its lodestar be $93,050 based on reasonable hourly rates. Gaines Decl. at ¶¶ 40-45. This amount includes a conservative projection of the time attorneys at Gaines & Gaines, APLC will expend finalizing and filing this motion, preparing and filing the final approval motion and attending the Final Fairness Hearing, and making sure that the settlement is successfully administered. The $145,130.29 fee award requested represents Class Counsel's lodestar with a multiplier of 1.56. Gaines Decl. at ¶ 48. In light of Class Counsel's reasonable hourly rates and reasonable hours worked, in addition to the substantial benefits obtained for the class, the quality of representation, complexity of the issues, and risk of non-payment, the $145,130.29 fee request is reasonable.

### 1.   Class Counsel's Hourly Rates are Reasonable

Under the lodestar method, courts should apply rates commensurate with hourly rates for private attorneys conducting non-contingent litigation of the same type. *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Ordinarily, reasonable hourly rates are based on each attorney's current hourly rates. *Vizcaino*, 290 F.3d at 1051 ("calculating fees at [current hourly rates]…compensate[s] for delay in receipt of payment").

Many Courts in the Los Angeles area (where Class Counsel are based), the San Francisco Bay Area, and other counties throughout California have approved attorneys' rates at Gaines & Gaines as follows: $300 per hour for Evan S. Gaines, a third year associate; $350 per hour for Sepideh Ardestani, a fifth year associate with an LLM; $450 per hour for Daniel F. Gaines, a tenth year lawyer (and managing shareholder of the firm); $500 per hour for Alex P. Katofsky, a 16 year lawyer; and

1   $650 per hour for Kenneth S. Gaines, a pillar of the Los Angeles legal community

2   with nearly 45 years in law practice.  Gaines Decl. at ¶¶ 40-45.

3       All of the attorneys that contributed work to this action specialize in complex

4   class actions and regularly litigate cases in California federal and state courts.  The

5   partners managing the litigation have extensive histories of success in litigating

6   high-stakes complex class action cases.  Gaines Decl. at ¶¶ 40-48.  Class Counsel's

7   years of class action experience and expertise led to Plaintiff's success in resolving

8   the action early in the litigation.  *See id.*  Reaching a settlement in the face of the

9   Defendants' hard fought opposition to the class claims is evidence of Class

10  Counsel's skill and high quality of representation.

11              **2.    Class Counsel's Hours are Reasonable**

12      Class Counsel has spent approximately 127 hours litigating this case to date.

13  Gaines Decl. at ¶ 39.  Class Counsel expects to spend at least another 72 hours over

14  the next six months (approximately 12 hours per month on average through the

15  conclusion of administration) preparing the final approval motion, preparing for and

16  attending the Final Approval Hearing, and dealing with claims administration

17  issues through the conclusion of this matter.  *Id.*  Reasonable hours include, in

18  addition to time spent during litigation, the time spent before the action was filed,

19  including time spent interviewing the clients, investigating the facts and the law,

20  preparing the initial pleadings and litigating the case.  *Webb v. Board of Educ.,* 471

21  U.S. 234 (1985).  In addition, the fee award should include time spent to establish

22  and support the attorneys' fee claim.  *Serrano v. Priest* (*"Serrano IV"*), 32 Cal.3d

23  621, 639 (1982).  The summarized time entries appended to the Gaines Declaration

24  at Exhibit C describe the work performed by Class Counsel, which included fact

25  investigation, drafting the complaint, conducting discovery, drafting a

26  mediation/ENE brief, preparing for and attending the ENE, negotiating the

27  settlement, and preparing this fee motion, among other tasks necessary to this

28  litigation.  *See* Gaines Decl. at ¶¶ 40-48.  This showing is more than sufficient to

establish Class Counsel's lodestar.  *Lobatz v. U.S. Cellular of Cal., Inc.*, 222 F.3d 1142, 1148-49 (9th Cir. 2000) (detailed time sheets were not required where fees were agreed upon in settlement agreement); *see also*, *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) (detailed time sheets are not required for fee awards).

### 3.  A Multiplier Is Warranted Here

Based on the reasonable hourly rates and hours suggested by Class Counsel, the requested fee award represents a multiplier of 1.56 – an amount well within the accepted range for class action cases.  *See* 4 *Newberg on Class Actions* 4th (4th ed. 2002) § 14.6 ("[m]ultiples ranging from one to four frequently are awarded in common fund cases when the lodestar method is applied.").  Class Counsel seek a fee that is fair to both them and the Class.  Based on the factors detailed herein, the proposed fee of $145,130.29 is fair to Class Counsel and fair to the Class.

### D. Class Counsel's Request for Costs is also Reasonable

In the course of this litigation, Class Counsel has incurred out-of-pocket costs of $3,369.71 to date.   Class Counsel expects to incur additional costs totaling $1,500 before the conclusion of the matter.  Gaines Decl. at ¶ 49, Ex. D.  Generally, recoverable costs include "out-of-pocket expenses that would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal citations and quotations omitted).   As demonstrated in the Gaines Declaration submitted herewith, the incurred costs included filing fees, travel expenses, parking fees, research fees, courier charges, mailing costs, and Federal Express charges.  Gaines Decl. at ¶ 49, Exhibit D (detailing of all categories of costs incurred).  Such costs are appropriate for cost reimbursement in these types of cases.  *See e.g.*, *In re United Energy Corp. Sec. Litig*,. MDL No. 726, 1989 WL 73211, at *6 (C.D. Cal. 1989) (quoting *Newberg*, Attorney Fee Awards, § 2.19 (1987)); *see also*, *In re GNC Shareholder Litig*, 668 F. Supp. 450, 452 (W.D. Pa. 1987).

The costs incurred by Class Counsel in this litigation benefited Class Members.  In light of the litigation costs that Class Counsel needed to incur to prosecute this action and the positive reaction of Class Members, the request for reimbursement of $4,869.71 in Class Counsel's costs is reasonable and should be granted.

### E.  The Enhancement Award for the Class Representative is Reasonable

Plaintiff requests a service award of $5,000.  Service awards are common in class action cases. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and risks they incurred during the course of the class action litigation").  An award to the named plaintiff is "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. A service award is appropriate as an incentive to the named plaintiff to participate in the suit. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

The approval of service awards falls squarely within the discretion of the Court.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463; *Van Vranken*, 901 F. Supp. at 299.  In exercising that discretion, district courts are "to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Incentive awards of $5,000 are typical in the District Court for cases like this one, where the class representative initiated the lawsuit, contributed effort to the

litigation, participated as necessary to advance the interests of the class, attended a settlement conference, and remained an active, engaged, and willing participant in the lawsuit for the benefit of Class Members. Gaines Decl. at ¶ 50. *See generally* the Declaration of Gillian Brown. *See Ross v. Bar None Enterprises, Inc.*, No. 2:13-CV-00234-KJM, 2015 WL 1046117, at *11 (E.D. Cal. Mar. 10, 2015) (approving a $5,000 enhancement award in a class action); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 455 (E.D. Cal. 2013) (approving enhancement awards of $5,000 each for two class representatives); *Franco v. Ruiz Food Products, Inc.*, No. 1:10–CV–02354–SKO, 2012 WL 5941801, at *23 (E.D.Cal. Nov. 27, 2012) (approving a $7,000 enhancement award in a class action); *Murillo v. Pac. Gas & Elec. Co.*, No. 2:08–1974 WBS GGH, 2010 WL 2889728, at *12 (E.D.Cal. July 21, 2010) (finding a $10,000 enhancement award reasonable in a class action).

The requested modest enhancement award is a fair way to laud the efforts of the Class Representative and incentivize her and future consumers to pursue justice for others through the class action device. Had Ms. Brown pursued her claims on an individual basis, with a maximum value of $1,000 (the maximum statutory damage award), she would have likely been able to obtain a fair resolution of her claims with a simple demand letter – no attorneys or litigation required. She chose to "fight the good fight" on behalf of others who likely were unaware of the Association's actions altogether. She will have waited for nearly two years to receive any payment (by the time the settlement is finally approved and payments are disbursed). The requested enhancement is fair to her and fair to the Class and should be approved.

## V. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion and approve (1) a total payment of $150,000 to Class Counsel of which $145,130.29 represents Class Counsel's attorneys' fees and $4,869.71 represents

1
2
3

reimbursement of Class Counsel's out-of-pocket costs incurred in the litigation of this action, and (2) payment of an enhancement award of $5,000 to Plaintiff and Class Representative Gillian Brown.

4
5

Dated:  January 25, 2017                      GAINES & GAINES, APLC

6
7

By:   /s/Alex P. Katofsky
ALEX P. KATOFSKY

8
9

Attorneys for Plaintiff
Gillian Brown and the Proposed Class

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28