KENNETH S. GAINES, ESQ. SBN 049045
ken@gaineslawfirm.com
DANIEL F. GAINES, ESQ. SBN 251488
daniel@gaineslawfirm.com
ALEX P. KATOFSKY, ESQ. SBN 202754
alex@gaineslawfirm.com
**GAINES & GAINES, APLC**
27200 Agoura Road, Suite 101
Calabasas, California 91301
Telephone: (818) 703-8985
Facsimile: (818) 703-8984

Attorneys for Plaintiff Gillian Brown
and Proposed Class Counsel

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILLIAN BROWN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>22ND DISTRICT AGRICULTURAL ASSOCIATION, a State entity; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO: 15-cv-2578-DHB<br><br><u>CLASS ACTION</u><br><br>**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:      May 11, 2017<br>Time:      3:30 p.m.<br>Courtroom: 3B<br>Judge:      Hon. David H. Bartick |

PLEASE TAKE NOTICE that on May 11, 2017, at 3:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3B of the United States District Court of the Southern District of California, Edward J. Schwartz U.S. Courthouse, which is located at 221 West Broadway, San Diego, CA 92101, the Honorable Judge David H. Bartick presiding, Plaintiff GILLIAN BROWN ("Plaintiff") will and hereby does move this Court for an order granting final approval of the class action settlement reached between Plaintiff, Defendant 22ND DISTRICT AGRICULTURAL ASSOCIATION (the "Association"), and Third Party Defendant SOLAR ON SET, LLC ("Solar").

Specifically, Plaintiff moves for an order: 1) confirming the Court's previous findings that the requirements for class certification, for settlement purposes, are satisfied; 2) finding that the Settlement is fair, reasonable and adequate; 3) finally approving the Settlement; 4) finding that adequate Notice of the Settlement was given; 5) directing distribution of settlement benefits as agreed in the Settlement; 6) entering judgment in accordance with the Settlement; 7) binding Class Members who did not timely exclude themselves from the Settlement to the release of claims in favor of the Released Parties as set forth in the Settlement; 8) barring Class Members who did not timely object to the Settlement or exclude themselves from the Settlement from prosecuting or pursuing any appeal of the Court's order (to the extent permitted by law); 9) without affecting the finality of the final judgment, reserving continuing jurisdiction over the parties for the purposes of implementing, enforcing and/or administering the Settlement; and 10) approving settlement administration fees to Simpluris, Inc. in the amount of $7,210, and newspaper publication expenses of $1,985.

The motion is based on this notice of motion and motion, the attached memorandum of points and authorities, the Class Action Settlement Agreement and Release ("Stipulation of Settlement"), the Supplemental Declaration of Daniel F. Gaines in Support of Motion for Final Approval of Class Settlement ("Gaines Supp.

1   Decl."), the Declaration of Jarrod Salinas of Simpluris, Inc. ("Salinas Decl."), the
2   Declaration of Timothy Fennell ("Fennell Decl."), the Declaration of Prof. Robert C.
3   Fellmeth, the previously-filed Declaration of Daniel F. Gaines in Support of Motion
4   for Award of Reasonable Attorneys' Fees and Costs and Class Representative
5   Enhancement (Docket ("Dkt.") No. 39-1), the previously-filed Declaration of Gillian
6   Brown in Support of Motion for Final Approval of Class Action Settlement and
7   Motion for Award of Reasonable Attorneys' Fees and Costs and Class Representative
8   Enhancement ("Brown Decl.") Dkt. No. 39-2, the pleadings and papers filed in this
9   case, and any oral argument this Court permits.

10        Defendant 22nd District Agricultural Association and Third Party Defendant
11   Solar On Set, LLC do not oppose this motion.

12
13   Dated:  April 21, 2017                 Respectfully Submitted,

14                                          GAINES & GAINES, APLC

15

16                                          By:   /s/ Alex P. Katofsky
17                                                ALEX P. KATOFSKY

18                                          Attorneys for Plaintiff GILLIAN BROWN
19                                          and the Class

20
21
22
23
24
25
26
27
28

1

## <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3
I.     INTRODUCTION ............................................................................. 1

4
II.    PROCEDURAL HISTORY AND SUMMARY OF

5
       RELEVANT FACTS ......................................................................... 2

6
III.   TERMS OF THE SETTLEMENT ...................................................... 2

7
IV.    THE SETTLEMENT RELIEF PAYABLE TO CLASS MEMBERS

8
       AS AGREED BY THE PARTIES ....................................................... 2

9
V.     ARGUMENT ................................................................................... 3

10
       A.     The Notice was the Best Practicable Notice Under

11
              the Circumstances ................................................................. 4

12
       B.     Final Approval of the Settlement is Warranted ...................... 6

13
              1.     Each of the Relevant Criteria Supports Final

14
                     Approval ...................................................................... 7

15
                     a.     The Strength of Plaintiff's Case Turns on an

16
                            Untested Area of Law Creating Significant Risks to

                            Plaintiff and the Class ........................................... 7
17

18
                     b.     The Complexity, Expense and Likely Duration of

                            Continued Litigation Weighs in Favor of Final
19
                            Approval ................................................................ 8

20
                     c.     The Value of the Settlement Favors Final Approval ....... 8

21
                     d.     Disclosure of Documents and Data Demonstrating

22
                            the Strengths and Weaknesses of this Action was

23
                            Completed Prior to Entering into the Settlement .......... 11

24
                     e.     The Experience and Views of Counsel Favor Final

25
                            Approval .............................................................. 12

26
                     f.     Class Members' Positive Reaction to the

                            Settlement
27
                            Favors Final Approval ........................................... 12

28
                     g.     The Proposed Cy Pres Recipient Is Appropriate .......... 11

1

**TABLE OF CONTENTS**
(continued)

2

3

C.     The Settlement Class Meets the Rule 23 Class Certification
       Requirements ........................................................................... 14

       1.     The Class is Sufficiently Numerous ......................................... 14

       2.     Commonality is Satisfied........................................................... 15

       3.     Plaintiff's Claims are Typical of Those of the
              Putative Class............................................................................ 15

       4.     Plaintiff and His Counsel Will Fairly and
              Adequately Represent the Class .............................................. 16

       5.     Predominance of Common Questions ..................................... 16

       6.     A Class Action is the Superior Method of Adjudication.......... 17

VI.    APPROVAL OF THE FEES INCURRED BY THE SETTLEMENT
       ADMINISTRATOR ...................................................................... 19

VII.   DEFENDANT HAS PROVIDED NOTICE TO THE CALIFORNIA
       AND UNITED STATES ATTORNEY GENERALS AS REQUIRED
       BY 28 U.S.C. § 1715.................................................................... 19

VIII.  CONCLUSION .............................................................................. 20

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Federal Cases</u>

*Amchen Products Inc. v. Woodward,*
   521 U.S. 591 (1997) ......................................................................18

*Churchill Village, L.L.C. v. GE,*
   361 F.3d 566 (9th Cir. 2004)..............................................1, 3, 4, 7

*Cotton v. Hinton,*
   559 F.2d 1326 (5th Cir. 1977)......................................................12

*Elkins v. Equitable Life Ins. of Iowa,*
   No. CivA96–296–Civ–T–17B, 1998 WL 133741
   (M.D. Fla. Jan. 27, 1998) .............................................................19

*Franklin v. Kaypro,*
   884 F.2d 1222 (9th Cir. 1989)........................................................4

*Lane v. Facebook, Inc.,*
   No. C 08-3845 RS, 2010 WL 9013059 (N.D. Cal. Mar. 17, 2010)
   *aff'd,* 696 F.3d 811 (9th Cir. 2012).....................................5, 11, 14

*National Rural Telecom. Cooperative v. DIRECTV, Inc.,*
   221 F.R.D. 523 (C.D. Cal. 2004) ..................................................12

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco,*
   688 F.2d 615 (9th Cir. 1982).....................................................7, 12

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ......................................................................18

*Shames v. Hertz Corp.,*
   No. 07-cv-2174-MMA WMC, 2012 WL 5392159
   (S.D. Cal. Nov. 5, 2012)..................................................................5

*Strube v. Am. Equity Life Ins. Co.,*
   226 F.R.D. 688 (M.D. Fla. 2005)..................................................19

*Valentino v. Carter-Wallace,*
   97 F.3d 1227 (9th Cir. 1996)........................................................17

1
2

# TABLE OF AUTHORITIES
## (continued)

3

*Vedachalam v. Tata Consultancy Servs., Ltd*,
  No. C 06-0963 CW, 2013 WL 3929119
4
  (N.D. Cal. July 18, 2013) ............................................................................... 13

5

*Wal-Mart Stores, Inc. v. Dukes*,
6
  131 S. Ct. 2541, 180 L. Ed. 2d 374 (2011) ..................................................... 15

7

Statutes
8
15 United States Code
9
  § 1681(c)(g) ....................................................................................................... 2
  § 1681n ............................................................................................................. 18
10
  § 1681n(a)(1)(A) ............................................................................................... 9
  § 1715 ......................................................................................................... 19, 20
11

12

**Rules**

13
Federal Rules of Civil Procedure
14
  Rule 23(a) ........................................................................................................ 16
  Rule 23(a)(1) ................................................................................................... 14
15
  Rule 23(a)(2) ................................................................................................... 15
  Rule 23(a)(4) ................................................................................................... 16
16
  Rule 23(b)(3) ....................................................................................... 17, 18, 19
17

  Rule 23(b)(3)(A), (B) and (C) ........................................................................ 18
18
  Rule 23(b)(3)(A)-(D) ...................................................................................... 18
19
  Rule 23(e) .......................................................................................................... 6
  Rule 23(e)(2) ...................................................................................................... 6
20

21

22

**Treatises**

23
*Manual for Complex Litigation, Fourth* (4th ed. 2004)
24
  § 21.632-34 ........................................................................................................ 6

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

On December 13, 2016, the Court granted preliminary approval of the proposed class action settlement (the "Settlement") reached between Plaintiff GILLIAN BROWN ("Plaintiff" or "Named Plaintiff"), Defendant 22nd District Agricultural Association (the "Association"), and Third Party Defendant Solar On Set, LLC ("Solar"), the terms of which are set forth fully in the Class Action Settlement Agreement and Release ("Stipulation of Settlement").[1]  Dkt. No. 38.

On January 25, 2017, Plaintiff filed a Motion for Award of Reasonable Attorneys' Fees and Costs and Class Representative Enhancement (the "Fee Application," Dkt. No. 39).  Filed concurrently with the Fee Application were the Gaines Decl. (Dkt. No. 39-1), and the Brown Decl.  Dkt. No. 39-2.

Pursuant to the Court's Orders, Class Members were given notice of the proposed class settlement and that the Court would hold a fairness hearing on May 11, 2017.  Salinas Decl. at ¶¶ 4-6.

The proposed Settlement satisfies all of the criteria for final settlement approval under federal law because it is fair, adequate, and reasonable.  Dkt. No. 39-1, Exhibit B (Stipulation of Settlement); *see Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004).   The positive response of the Class Members to the Settlement provides strong support that final settlement approval is appropriate.  Not a single Class Member objected to the Settlement, nor did any Class Members opt out.

Each admission entrance fee for the 2017 San Diego County Fair (subject to a $750,000 total reduction cap) shall be reduced fifty (50) cents from the fair market value of such admission prices as has been agreed upon by Class Counsel and the Association and the Association's Counsel.  To the extent the reduction cap has not

---

[1] The Stipulation of Settlement is at Dkt. No. 39-1, attached as Exhibit B to the Declaration of Daniel F. Gaines submitted with the Motion for Award of Reasonable Attorneys' Fees.  Dkt. No. 39-1.

been met through the 2017 San Diego County Fair fee reduction, each admission entrance fee for the 2018 San Diego County Fair (subject to a $750,000 total reduction cap, inclusive of the previous year reduction) shall be reduced *pro rata* based on a calculation of the expected 2018 attendance and the remaining amount under the reduction cap.  As detailed herein, the parties' estimate of the fair market value for adult admission prices to the 217 San Diego County Fair is $18.50, and the fair market value for child admission is $11.50. *See* Fennell Decl. at ¶¶ 16, 17.   As such, under this Settlement, such prices will be reduced by 50 cents to $18.00 and $11.00, respectively. *See* Fennell Decl. at ¶ 18.

The Settlement provides a fair result for Class Members who suffered no real monetary loss as a result of Defendant's allegedly willful violation of their rights under Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681(c)(g), which is part of the Fair Credit Reporting Act.  Plaintiff respectfully requests that the Court grant final approval of the Settlement.

## II.   PROCEDURAL HISTORY AND SUMMARY OF RELEVANT FACTS

To conserve space and avoid redundancy, Plaintiff directs the Court to the discussion in Section II (pages 2-6) of Plaintiff's Motion for Award of Reasonable Attorneys' Fees and Costs and Class Representative Enhancement (Dkt. No. 39) for a comprehensive discussion of this matter's procedural history and relevant facts.

## III.   TERMS OF THE SETTLEMENT

As in the section above, Plaintiff directs the Court to the discussion in Section III (pages 6-9) of Plaintiff's Motion for Award of Reasonable Attorneys' Fees and Costs and Class Representative Enhancement (Dkt. No. 39) for a comprehensive discussion of the settlement's terms.

## IV.   THE SETTLEMENT RELIEF PAYABLE TO CLASS MEMBERS AS AGREED BY THE PARTIES

Pursuant to the Settlement, Class Members benefit from a reduction in ticket prices for the 2017 San Diego County Fair from the fair market values of $18.50 for adult admission and $11.50 for child admission by 50 cents to $18.00 and $11.00, respectively. *See* Fennell Decl. at ¶¶ 16,17, 18.

The Association arrived at the original fair market value after careful consideration to various market factors, including, but not limited to: consumer surveys from prior San Diego County Fairs, market research, ticket prices for competing attractions and events, expected attendance, and rising costs unique to the new attractions for the 2017 San Diego County Fair, such as a fair-wide Western "Wild Wild West" theme that introduces new rodeo and cowboy attractions that significantly increase costs. *See* Fennell Decl. at ¶¶ 16,17.

As the San Diego County Fair is one of the largest and most attended county fairs in the United States and Canada (*see* Fennell Decl. at ¶¶ 5, 6), reduction of admission prices for all attendees offers substantial value to all Class Members. Given the benefit to all Class Members, no Class Members chose to opt out of the Settlement. Salinas Decl. at ¶ 7.

## V.   <u>ARGUMENT</u>

The policy of the federal courts is to encourage settlement before trial, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Churchill Village, L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004) (noting "strong judicial policy" favoring settlements, provided they were reached through arms-length, non-collusive negotiations); *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1027 (9th Cir. 1998) (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). "Litigation settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . .   The economics of litigation are such that pretrial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial

1  process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989). These concerns

2  apply with particular force in a case such as this where an allegedly illegal practice

3  affected tens of thousands of consumers.

4  **A. The Notice was the Best Practicable Notice Under the Circumstances**

5  Federal Rule of Civil Procedure 23 (c)(2) requires that the class members

6  receive "the best notice practicable under the circumstances." Fed. R. Civ. P 23 (c)(2);

7  *see also*, *Churchill Village*, 361 F.3d at 575. "Notice is satisfactory if it 'generally

8  describes the terms of the settlement in sufficient detail to alert those with adverse

9  viewpoints to investigate and to come forward and be heard.'" *Churchill Village*, 361

10  F.3d at 575.

11  On December 13, 2016, the Court granted preliminary approval of the

12  Settlement and approved the proposed notice plan, publication on the Internet via a

13  settlement website, a link to the settlement website on the Association's website, and

14  publication on two separate occasions in a regional newspaper in San Diego

15  (collectively "the Notice"). *See* Gaines Decl., Ex. B at ¶ 10.2. The long-form court-

16  approved Notice published on the settlement website advised Class Members of the

17  essential terms of the Settlement, defined the Settlement Class, set forth the procedure

18  for opting out of the Class or filing objections to the Settlement and provided specifics

19  on the date, time and place of the fairness hearing.[2]  Exhibit A to Salinas Decl. The

20  Notice also provided the details of the case and the proposed settlement and the

21  specific options available to Class Members. *Id.* In particular, it informed Class

22  Members of the settlement terms, thereby permitting them to make an informed

23  decision about whether to opt out, or take other or no action. *Id.* The short form

24  notices provided basic but comprehensive information about the settlement and also

25  directed Class Members to the settlement website where they could view the long-

26  _____

27  [2] The Court changed the location of the final fairness hearing during the notice period,
and the updated location was posted in the Settlement Website shortly after it was
28  determined. Salinas Decl. at ¶ 5.

1  form notice.   Exhibits B-D to Salinas Decl.   In addition, the settlement process

2  received some media coverage, including on San Diego's ABC affiliate.

3        Pursuant to the notice procedure set forth in the Stipulation of Settlement and

4  approved in the Court's preliminary approval order, on January 27, 2017, Simpluris

5  published the settlement website.   *See* Salinas Decl. at ¶ 6.   As required by the

6  preliminary approval order, Simpluris caused the Notice to appear in the Uptown San

7  Diego Examiner on February 8, 2017 and February 15, 2017, and caused the Notice to

8  appear in the San Diego Business Journal on February 13, 2017 and February 20, 2017,

9  in the manner required by the Court's order.   *See* Salinas Decl. at ¶ 6; Exhibit D to

10  Salinas Decl.   From the period January 27, 2017 through March 28, 2017, a brief

11  description of the lawsuit and a link to the Settlement Website appeared on the San

12  Diego County Fair's website, www.sdfair.com and on the website for the Del Mar

13  Fairgrounds,

14  http://www.delmarfairgrounds.com/index.php?fuseaction=about.notifications.

15  Gaines Supp. Decl. at ¶ 6.

16        This notice program here comports with accepted standards in notice of class

17  actions, particularly where the Class Members' contact information is not readily

18  available to the parties.

19        Courts in the Ninth Circuit have found similar, multifaceted notice programs

20  to be sufficient. *See e.g.*, *Lane v. Facebook, Inc.*, No. C 08-3845 RS, 2010 WL

21  9013059, at *1 (N.D. Cal. Mar. 17, 2010) *aff'd*, 696 F.3d 811 (9th Cir. 2012) (granting

22  final approval of class settlement and finding that notice via email and Facebook

23  messages was adequate); *Shames v. Hertz Corp.*, No. 07-cv-2174-MMA WMC, 2012

24  WL 5392159 (S.D. Cal. Nov. 5, 2012), *appeal dismissed* (Jan. 23, 2013) (granting

25  final approval of class settlement and holding that redundancies in notice procedure,

26  which included publication, reasonably ensured the best practicable notice).

27        The notice procedure also provided adequate time for Class Members to make

28  objections or opt out of the settlement.   See Salinas Decl., Exs. A-D.   The Notice

approved by the Court at the preliminary approval stage was the best notice practicable under the circumstances and fairly apprised Class Members of the proposed settlement terms and their options.

## B. **Final Approval of the Settlement is Warranted**

Pursuant to Federal Rule of Civil Procedure 23(e), the Court must approve any proposed class settlement. Court approval of class action settlements requires the following steps:

> (1)  Preliminary approval of the proposed settlement at a preliminary hearing;
>
> (2)  Dissemination of mailed and/or published notice of the settlement to all affected Class members; and
>
> (3)  A "formal fairness hearing," or final settlement approval hearing, at which Class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*Manual for Complex Litigation, Fourth* (4th ed. 2004) ("Manual") § 21.632-34.

The first two steps of this process are now complete. The first step was completed on December 13, 2016, when this Court granted preliminary approval to the Settlement. Dkt. No. 38. In doing so, the Court determined that the Settlement was within the range of possible final approval and that notice to the Class Members of the Settlement's terms and of the scheduling of the formal fairness hearing should be distributed. *Id.*

The second step in the class action settlement approval process, the dissemination of the Notice, is complete as well, as just described.

The last step in the class action settlement approval process is the final approval hearing at which the Court shall determine whether the Settlement is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). At the final approval hearing,

scheduled on May 11, 2017, Class Members will have the opportunity to be heard regarding the Settlement, and Class Counsel will present evidence and argument in support of the Settlement.  At the conclusion of the final approval hearing, the Court will decide whether to grant final approval of the Settlement and whether to enter a final order and judgment.

### 1.  Each of the Relevant Criteria Supports Final Approval

When evaluating the fairness, reasonableness and adequacy of a settlement, courts consider some or all of the following factors: the strength of the plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the amount offered in the settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; and the reaction of the class members to the proposed settlement. *Churchill Village*, 361 F.3d at 576; *Hanlon*, 150 F.3d at 1026.  In addition, the Court must determine that the settlement was not the product of collusion between the negotiating parties. *Churchill Village*, 361 F.3d at 576; *Hanlon*, 150 F.3d at 1026.  "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625.

### a.  The Strength of Plaintiff's Case Turns on an Untested Area of Law Creating Significant Risks to Plaintiff and the Class

A critical factor in determining the strength of Plaintiff's case is the fact that, to Plaintiff's knowledge, there is very little, if any, case law where a defendant has been found liable for a willful violation of FACTA.  Gaines Decl. at ¶ 34.  Although Plaintiff maintains that she would have succeeded at trial and Defendant, on the other hand, maintains that it would have succeeded in defeating Plaintiff's claims, there is significant uncertainty concerning the interpretation of FACTA and the requirements

1  for a "willful" violation thereof, including determining how best to litigate the Action

2  so that willful violations could be established on a class basis.

3      Such uncertainty supports that the Settlement is a good compromise for the

4  absent Class Members.  The Class Members submitting valid claims will receive

5  monetary benefits and avoid the risks of proceeding with a trial on an untested theory

6  of liability.

7          **b.  The Complexity, Expense and Likely Duration
                of Continued Litigation Weighs in Favor of**

8              **Final Approval**

9      Consumer class action cases are expensive and time-consuming to prosecute.

10  However, this case presents a more difficult situation than most given the lack of legal

11  authority, and continually evolving law, surrounding the interpretation of FACTA and

12  litigation of class actions in federal court altogether.  Continued litigation of this

13  action against Defendant would likely be complex and expensive, due to the size of

14  the class and the nature of the claims.

15      Furthermore, the Settlement avoids the need for a contested class certification

16  motion that would be time consuming and costly for Plaintiff to file, Defendant to

17  oppose, and the Court to decide.  In addition, if the Court were to deny such a motion

18  for class certification, Class Members would be left without a group remedy, and the

19  issues presented here would need to be litigated individually in a piecemeal, costly,

20  and time-consuming fashion.  The Settlement also avoids a lengthy trial or trials that

21  likely would have involved testimony by numerous witnesses and experts. *See* Gaines

22  Supp. Decl. at ¶¶ 10-23.

23          **c.  The Value of the Settlement and Its Allocation
                Method Favor Final Approval**

24

25      The Parties have agreed to settle this matter for a settlement package valued at

26  $925,000 (including attorneys' fees, costs, and class representative enhancement).

27  Dkt. No. 39-1 at ¶ __.  The Settlement provides an excellent result for Class Members

28  who suffered no actual monetary loss as a result of Defendant's conduct.  Class

1    Counsel in this case negotiated a settlement which ensures that Class Members will
2    receive a monetary benefit.  Each adult admission entrance fee for the 2017 San
3    Diego County Fair (subject to a $750,000 total reduction cap) shall be capped at
4    $18.00, and each child admission entrance fee shall be capped at $11.00, which is a
5    fifty (50) cent reduction from the fair market value of current admission prices, which
6    are no less than $18.50 for adults and $11.50 for children.  Stip. at ¶ 9.2(A); *see*
7    Fennell Decl. at ¶¶ 16, 17, 18.

8    If the Action had not settled and *if* Plaintiff succeeded in overcoming the
9    significant hurdle of class certification **and** proved Defendant's liability at trial, the
10   Class Members would have been seeking FACTA statutory damages, which are
11   limited to between $100 and $1,000.  15 U.S.C. § 1681n(a)(1)(A).  The Settlement
12   provides the class members with a monetary benefit and does so now, avoiding the
13   very real risk not succeeding at the liability phase, which likely would take years to
14   resolve.  These are significant benefits for the Class Members and the efficiency with
15   which this litigation was conducted and resolved should be rewarded.  *See Heritage*
16   *Bond*, 2005 U.S. Dist. LEXIS 13627, at *27-28 (median amounts recovered in
17   settlement of shareholder class actions were between 2%-3% of possible damages).
18   Gaines Supp. Decl. at ¶ 16.

19   A substantial discount on the maximum value of the case was warranted in
20   light of the significant risks going forward.  While Plaintiff projects the maximum
21   exposure to the Association at up to $10,000,000 (at the rate of $100 per allegedly
22   defective receipt issued), the discount proposed by the Settlement is reasonable and
23   fair in light of the facts of this case, the litigation risks, the class certification risks,
24   the fact that the Association is a government entity funded in part by taxpayer dollars,
25   and the settlement values in other similar FACTA cases.  Gaines Supp. Decl. at ¶ 17.

26   Class certification is challenging to obtain in FACTA cases, and when it can
27   be obtained, some Courts have declined to certify a class as broad as Plaintiff seeks.
28   In *Rowden v Pacific Parking Systems*, 282 F.R.D. 581, 587 (C.D. Cal. 2012), Judge

Carney declined to certify a class on FACTA claims, finding that a class action was not a superior means to adjudicate the case, the class was not ascertainable, and a class action would be unfair.  In *Tchoboian v. FedEx Office and Print Services, Inc.*, (C.D. Cal., No. 8:10-cv-01008-JAK-MLGx), Judge Kronstadt tentatively certified a class on FACTA claims, but limited it to only those individuals who have maintained their printed receipts displaying the allegedly improper digits with such transactions and account numbers concerning only consumer cards (Docket no. 135, Civil Minutes dated April 23, 2012).  Gaines Supp. Decl. at ¶ 18.

Recovery on the merits on a classwide basis is also not guaranteed here. Defendant's defenses to certification and liability are an important basis for validating the reasonableness of the settlement amount.  Defendant has consistently maintained that it has ample legal and factual grounds for defending this action on both class and merits issues.  For example, Defendant argues that it did not "willfully" violate FACTA (and, hence, has no liability to Plaintiff or Class Members under the statute) because it did not discover it was printing expiration dates, and had hired a company, Solar, that represented it was an expert for installing point of sale systems for electronic purchases and certified that its system was legally compliant.  It also contends that California Government Code § 818 precludes the award of statutory damages (like those Plaintiff seeks under FACTA) against a government entity. These risks militate in favor of the Settlement's approval.  Gaines Supp. Decl. at ¶ 19.

With respect to allocation of the settlement proceeds, Defendant and Solar cannot independently identify who is a Settlement Class Member – their contact information is not retained and not available.  As a result, it would be impossible to put consideration directly into the pockets of Class Members here without some form of claims process, which would be difficult or impossible to administer due to Defendant's lack of records, inevitably involve a small claims rate (claims rates of well under 1% are typical in consumer class action settlements), and involve

1   enormous notice expenses that may eclipse the value of the Settlement altogether.

2   Gaines Supp. Decl. at ¶ 20.

3       Consequently, the Parties agreed on an allocation of settlement proceeds which

4   yields a reduction in admission fees for those most likely to be Class Members –

5   future fairgoers.  It is not a perfect solution, but given the circumstances here, the

6   Parties believe it is most likely to yield the most benefit to those who are Class

7   Members.  Gaines Supp. Decl. at ¶ 21.

8       The Ninth Circuit has approved such distribution formulas in the context of

9   class action settlements where attempting to pay Class Members directly would be

10  prohibitively expensive, impossible, or futile.  *See Lane v. Facebook, Inc.*, 696 F.3d

11  811, 821 (9th Cir. 2012) ("The cy pres remedy the settling parties here have devised

12  bears a direct and substantial nexus to the interests of absent class members and thus

13  properly provides for the "next best distribution" to the class.").   The proposed

14  allocation formula is therefore fair and appropriate in the best interests of the Class.

15  Gaines Supp. Decl. at ¶ 22.

16          **d.  <u>Disclosure of Documents and Data</u>**
            **<u>Demonstrating the Strengths and Weaknesses of</u>**
17          **<u>this Action was Completed Prior to Entering</u>**
            **<u>into the Settlement</u>**
18

19      The Settlement was only reached after the Parties exchanged substantive

20  information through discovery, as well as apprised each other of their respective

21  factual contentions, legal theories, and defenses.  Thus, the Parties negotiated the

22  Settlement with ample knowledge of the strengths and weaknesses of this case and

23  the amounts necessary to compensate Class Members for their estimated damages.

24      The Parties engaged in extensive good-faith, arms-length negotiations,

25  including a full-day early neutral evaluation session conducted before a formidable

26  Magistrate Judge.  Moreover, while Defendant did not dispute that it in fact printed

27  prohibited information on customer receipts, Defendant strongly denied liability for

28  statutory damages and challenged Plaintiff's ability to certify the class and prove a

1   willful violation of FACTA.  It was apparent that continued litigation of this lawsuit

2   presented Plaintiff with substantial legal risks of certifying the class, proving liability

3   and defeating any appeals relating to liability, damages or class certification.  Gaines

4   Supp. Decl. at ¶¶ 10-25.

5                                 **e.   The Experience and Views of Counsel Favor**
                                  **Final Approval**

6

7            The endorsement of qualified and well-informed counsel of the settlement as

8   fair is entitled to significant weight.  *National Rural Telecom. Cooperative v.*

9   *DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded

10  to the recommendation of counsel, who are most closely acquainted with the facts of

11  the underlying litigation." (citation omitted). This is because parties "represented by

12  competent counsel are better positioned than courts to produce a settlement that fairly

13  reflects each party's expected outcome in the litigation." *Id.* (citation omitted). "Thus,

14  'the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its

15  own judgment for that of counsel.'" *Id.* (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330

16  (5th Cir. 1977); *see also Officers for Justice v. Civil Serv. Comm'n of City and County*

17  *of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) (a court's inquiry is ultimately

18  limited "to the extent necessary to reach a reasoned judgment that the agreement is

19  not the product of fraud or overreaching by, or collusion between, the negotiating

20  parties.").

21           Class Counsel believe this Settlement to be an excellent result for the Class

22  Members.  *See* Gaines Supp. Decl. at ¶¶ 10-25.  Class Counsel have significant

23  experience in complex class litigation, including numerous FACTA and other privacy

24  related class actions.  *Id.*  Class Counsel are of the opinion that the Settlement is fair,

25  adequate, reasonable, and in the best interest of the Class Members.  *Id.*

26                                **f.   Class Members' Positive Reaction to the**
                                  **Settlement Favors Final Approval**

27

28

---

Finally, courts look at the reaction of class members to determine if a settlement that directly affects their interests should be approved as fair, adequate, and reasonable.  Of most importance is the fact that not a single Class Member objected to the Settlement.  Salinas Decl. at ¶ 8.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *Nat'l Rural Telecomm.*, 221 F.R.D. at 529.  "The absence of a single objection to the Proposed Settlement provides further support for final approval. . . . "  *Id.*; *see also*, *Vedachalam v. Tata Consultancy Servs., Ltd*, No. C 06-0963 CW, 2013 WL 3929119, at *1 (N.D. Cal. July 18, 2013) (same).  Moreover, no Class Members chose to opt out of the Settlement.  Salinas Decl. at ¶ 7 .  The Court should construe the overwhelming non-opposition to the Settlement as a strong indication of Class Members' support for the Settlement as fair, adequate, and reasonable.

### g.  The Proposed *Cy Pres* Recipient Is Appropriate

A total of approximately $10,800 from the Maximum Payment will be donated to a *cy pres* recipient in accordance to the terms of the Settlement.[3]  Dkt. No. 39-1, Exhibit B at ¶ 9.2(B).

A *cy pres* award must qualify as the "next best distribution" to giving funds directly to class members.  *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990).  A fluid recovery or "cy pres" distribution avoids the difficulties of distributing monies to class members and the cost associated with such payment by permitting aggregate calculation of damages, the use of summary claim procedures and distribution of unclaimed funds to indirectly benefit the entire class.  *Id.*  Federal courts frequently approve this remedy in the settlement of class actions

---

[3] This accounts for the costs of the Neutral Expert and unrequested administration expenses.  The parties reached an agreement as to entrance pricing, such that the expert's services were not required.  Any unawarded portion of attorneys' fees, costs, and service payment to the class representative will be added to this amount.

1  when proof of individual claims would be burdensome or distribution of damages

2  costly.  *Id.*; *Lane v. Facebook, Inc.*, 696 F.3d 811, 819-820 (9th Cir. 2012).

3       Here, the parties suggest the *cy pres* recipient Children's Advocacy Institute

4  (CAI) at the University of San Diego School of Law, an academic, research, and

5  advocacy organization devoted to improving the health, safety, and well-being of

6  children and youth.  In its academic component, CAI trains law students to be effective

7  child advocates. In its research and advocacy component, CAI seeks to leverage

8  positive change for children and youth through impact litigation, regulatory and

9  legislative advocacy, research and public education at the state and federal levels.  See

10  Declaration of Prof. Robert C. Fellmeth ("Fellmeth Decl.") at ¶ 2.

11       Among CAI's objectives is protecting the privacy interests of children and

12  youth, which is its nexus to the claims asserted in this litigation.  As such, it will

13  promote the same underlying objectives as this litigation – privacy – rendering it is an

14  appropriate recipient of the *cy pres* funds here.  *See generally*, Fellmeth Declaration.

15  **C. The Settlement Class Meets the Rule 23 Class Certification**
       **Requirements**

16  

17       In the preliminary approval order, the Court conditionally held that, for

18  settlement purposes, the Settlement Class satisfies the class certification criteria of

19  Federal Rule 23.  Ex. B.  For the reasons to be discussed below, the certification of

20  the Settlement Class for settlement purposes should be confirmed in a final approval

21  order.

22       **1.  <u>The Class is Sufficiently Numerous</u>**

23       The numerosity requirement is satisfied when joinder of all class members is

24  impracticable. Fed. R. Civ. P. 23(a)(1).  During the applicable statutory period,

25  September 10, 2010 through the date of preliminary approval (December 13, 2016),

26  it is estimated that the Association generated approximately 100,000 allegedly

27  defective receipts.  The number of Class Members, while not precisely known, is

28  large – likely in excess of 50,000 individuals.  Therefore, joinder of individual claims

1  would be impractical and the numerosity requirement is satisfied for settlement

2  purposes.  Gaines Supp. Decl. at ¶ 29.

3  ## 2. Commonality is Satisfied

4  To qualify for certification, proposed class members must share common

5  questions of fact and law.  Fed. R. Civ. P. 23(a)(2); see also, *Hanlon*, 150 F.3d at 1019

6  (commonality is "construed permissively").  To satisfy commonality, the plaintiff

7  must assert at least one common contention that is capable of class-wide resolution.

8  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).

9  Here, the Class Members all seek the same remedies under the identical federal law

10 under the same theories of recovery, all relating to the Association's alleged failure to

11 truncate the expiration dates of Class Members' credit and debit cards during the

12 applicable class period, in violation of FACTA.  The same factual predicates apply to

13 each and every Class Member.  The Settlement compensates Class Members for these

14 identical claims.  Gaines Supp. Decl. at ¶ 30.

15 Under these circumstances, the commonality requirement is satisfied for

16 settlement purposes.  *Id*. at 1019-20; *see also Cox*, 784 F.2d at 1557.

17 ## 3. Plaintiff's Claims are Typical of Those of the Putative
18 ## Class

19 Typicality is satisfied if the named plaintiff's claims "are reasonably co-

20 extensive with those of absent class members; they need not be substantially

21 identical."  *Hanlon*, 150 F.3d at 1020.  Here, Plaintiff Brown's claims are not only

22 typical of those of all Class Members – they are identical.  Plaintiff alleges the

23 Association failed to truncate the expiration date of her credit card number on the

24 printed receipt that the Association provided to her at the point of sale – Plaintiff

25 Brown alleges that this violates FACTA and subjects the Association to statutory

26 penalties.  This is the same claim alleged on behalf of all Class Members.  Gaines

27 Supp. Decl. at ¶ 31.  Plaintiff satisfies the typicality requirement for settlement

28 purposes because his claims arise from the same factual basis and are based on the

1  same legal theories as those applicable to all Settlement Class Members. *Welmer v.*
2  *Syntex* 117 F.R.D. 641, 644 (N.D. Cal. 1987)

3  ### 4. Plaintiff and Her Counsel Will Fairly and Adequately Represent the Class

4

5  Rule 23(a) also requires that the "representative parties will fairly and
6  adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means
7  that proposed class representative and her counsel cannot have conflicts of interest
8  with the class and must vigorously prosecute the action on behalf of the class. *Hanlon*,
9  150 F.3d at 1020. Here, Plaintiff Brown has interests directly aligned with all Class
10  Members and has prosecuted this case on their behalf. She has no apparent conflicts
11  with Class Members. She has demonstrated a commitment to prosecute this Action
12  on their behalf through its conclusion. Gaines Supp. Decl. at ¶ 32.

13  Under the proposed Settlement, Ms. Brown will request a small enhancement
14  payment – $5,000 – for her time and efforts, including assisting Class Counsel with
15  factual issues surrounding the case as well with settlement discussions and
16  participation at the early neutral evaluation. This award represents a small percentage
17  of the total value of the settlement consideration, and therefore does not constitute a
18  sufficient conflict of interest to foreclose fulfilling the adequacy requirement. Gaines
19  Supp. Decl. at ¶ 33.

20  Additionally, Plaintiff's counsel are highly experienced litigators, with more
21  than seven decades of collective litigation experience. As evidenced by the
22  declaration of Daniel F. Gaines filed herewith, Gaines & Gaines, APLC has
23  substantial experience prosecuting complex class action cases, both in the consumer
24  and employment contexts. As such, there is no conflict of interest between the Named
25  Plaintiff, proposed Class Counsel, and the Settlement Class Members, and the
26  adequacy element is met. Gaines Decl. at ¶¶ 2-5.

27  ### 5. Predominance of Common Questions

28

The claims of the Settlement Class here are sufficiently cohesive to warrant certification.  For settlement purposes, common questions of fact and law affecting proposed Class Members in this case clearly predominate over questions that may affect individual members.  In analyzing predominance, as with commonality, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Cox*, 784 F.2d at 1557.  The test is whether the proposed class is sufficiently cohesive to warrant adjudication by representation.  Here, the proposed Settlement Class is sufficiently cohesive because all Settlement Class Members share a common nucleus of facts and potential legal remedies – the same facts and law govern their claims; this Court could try their claims in representative fashion by common evidence regarding Plaintiff's and Class Members' claims, and identical law applies.  All of the Settlement Class Members seek statutory damages based on the same allegations.

As stated above, each credit and debit card receipt at issue printed an impermissible credit or debit card expiration date.  The defect on all receipts was actually caused by the same underlying error – which means that Plaintiff and all Class Members will invoke the same identical set of facts to demonstrate commonality among Class Members.

Because the same facts and the same law will drive resolution of this case – and the claims of the class will rise or fall depending on whether Plaintiff's claims rise or fall – common questions of law and fact predominate here.

### 6.  A Class Action is the Superior Method of Adjudication

A class action is the superior method of adjudication compared to a multitude of individual suits.  "[I]f a comparative evaluation of other procedures reveals no other realistic possibilities, this [superiority] portion of Rule 23(b)(3) has been satisfied." *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001) (citations omitted); *see also Valentino v. Carter-Wallace*, 97 F.3d 1227, 1235-36 (9th Cir. 1996) (similar).

In *Culinary/Bartender*, the Ninth Circuit held that a class action met the superiority requirements of Rule 23(b)(3) where class members could recover, at most, damages in the amount of $1,330.  244 F.3d at 1163.  Here, Class Members can recover, at most, statutory damages in an amount between $100 and $1,000 per violation. 15 U.S.C. § 1681n.  As in *Culinary/Bartender*, "this case involves multiple claims for relatively small sums" and a class action clearly serves as the only method that would "permit the plaintiffs to pool claims which would be uneconomical to litigate individually."  *Id.* at 1163, quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  *Culinary/Bartender* clearly dictates that the superiority requirements of Rule 23(b)(3) are satisfied here.

Superiority also is supported by the interest of members of the class in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D).  However, when a court reviews a class action settlement, the fourth factor does not apply.  *Amchem Products Inc. v. Woodward*, 521 U.S. 591, 620 (1997) (in deciding whether to certify a settlement class action, a district court "need not inquire whether the case, if tried, would present intractable management problems.).  The remaining factors set forth in Rule 23(b)(3)(A), (B) and (C) all favor class certification in this case.

First, Class Members have no particular interest in individually controlling the prosecution of separate actions.  Statutory damages cannot exceed $1,000.  15 U.S.C § 1681n.  Plaintiff does not allege that any Class Members suffered actual economic loss, and any who believe they did had the option to opt out of the settlement if they wished to pursue actual damages.  Second, the only pending FACTA lawsuit against Defendant is before this Court.  Finally, it is desirable to concentrate the issues in this

forum because all noncompliant receipts were printed at the San Diego County Fair, located in this District.

Moreover, the parties have reached a Settlement.  "With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious." *Elkins v. Equitable Life Ins. of Iowa*, No. CivA96–296–Civ–T–17B, 1998 WL 133741, at * 19 (M.D. Fla. Jan. 27, 1998); *see also*, *Strube v. Am. Equity Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (third and fourth Rule 23(b)(3) factors are "conceptually irrelevant in the context of settlement.").  And although manageability is not a concern in the settlement context, *Amchem*, 521 U.S. at 593, Plaintiff is not aware of any issues that would render unmanageable the adjudication of Plaintiff's class claims. Accordingly, the class action is the superior method for adjudicating this action.

## VI.   APPROVAL OF THE FEES INCURRED BY THE SETTLEMENT ADMINISTRATOR

As part of the preliminary approval process, the Court approved the hiring of Simpluris as the Settlement Administrator.   In preliminarily approving the Stipulation, the Court also tentatively approved a payment to Simpluris to perform all of the duties required to administer the Settlement.  Simpluris has performed all of its required duties to date and is committed to completing the claims administration process. *See generally* Declaration of Salinas.  Simpluris' fees are $7,210, and the publication notice expense is $1,985, totaling $9,195, which is far below the Parties' estimate and agreement in the Stipulation of $15,000.  Stip. at ¶ 2.20.   Plaintiff requests that the Court approve these disbursements from the Common Fund as part of its final order approving the Settlement.

## VII.   DEFENDANT HAS PROVIDED NOTICE TO THE CALIFORNIA AND UNITED STATES ATTORNEY GENERALS AS REQUIRED BY 28 U.S.C. § 1715

As a class action resolved in federal court, the Association is required to notify "appropriate Federal and State officials" of the Settlement.  28 U.S.C. §

1715.   The Association notified the required officials on September 19, 2016. Gaines Supp. Decl. at ¶ 36; Exhibit "E" to Gaines Supp. Decl.

28 U.S.C. § 1715(d) provides that "[a]n order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice…." 28 U.S.C. § 1715(d).

More than 90 days have passed since notice was provided and the Parties have received no objections from any State or Federal officials.  Gaines Supp. Decl. at ¶ 36.  As such, the Settlement may be finally approved by the Court.

## VIII.  **CONCLUSION**

For all of the reasons discussed above, the proposed class Settlement is fair, reasonable and adequate, as this Court initially agreed in granting preliminary approval.  The proposed Settlement will result in substantial benefits to Class Members and was achieved as the result of informed, non-collusive and arms' length negotiations conducted by experienced counsel.  For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant final approval of the parties' class action Settlement.


Dated:  April 21, 2017                    Respectfully Submitted,

                                          GAINES & GAINES, APLC


                                          By:   /s/Alex P. Katofsky
                                          _____
                                                ALEX P. KATOFSKY

                                          Attorneys for Plaintiff GILLIAN BROWN
                                          and the Class

1111592/32371672v.1