UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILLIAN BROWN, on behalf of herself and all others similarly situated,<br><br>                                        Plaintiff,<br><br>v.<br><br>22ND DISTRICT AGRICULTURAL ASSOCIATION, a State entity; and DOES 1 through 10, inclusive, a State entity,<br><br>                                        Defendant. | Case No.:  15-cv-2578-DHB<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION FOR INCENTIVE AWARDS [ECF Nos. 39 AND 42]** |
| 22ND DISTRICT AGRICULTURAL ASSOCIATION, a State entity,<br><br>                Third Party Complainant<br><br>v.<br><br>SOLAR ON SET, LLC, and ROES 1 through 20, inclusive,<br><br>                Third Party Defendant. | |

# BACKGROUND

## A.  Facts and Procedure

In July 2015, Plaintiff used her credit card to make a purchase at the Del Mar Fairgrounds during the County Fair.  (ECF No. 39-2 at ¶ 2.)  The entire expiration date of Plaintiff's credit card was printed on the receipt generated and provided to Plaintiff by the Association at the point of sale.  (*Id.*)

On September 30, 2015, Plaintiff Gillian Brown ("Plaintiff") commenced this class action against Defendant 22nd District Agricultural Association (the "Association" or "Defendant") in California Superior Court, County of San Diego, seeking relief for violations of the Fair and Accurate Credit Transaction Act, itself an amendment to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FACTA").  (ECF No. 1-2 at 10-18.) Specifically, the Complaint alleges that the Association violated FACTA, 15 U.S.C. § 1681c(g), by printing a receipt containing the expiration date of Plaintiff's credit card used at the point of sale during the 2015 San Diego County Fair ("County Fair").  (*Id.* at ¶¶ 16, 28-40.)  Plaintiff sued on behalf of consumers who were issued an electronically printed debit and/or credit card receipt which was not FACTA complaint at the Del Mar Fairgrounds, located in Del Mar, California.  (*Id.* at ¶ 17.)

On November 16, 2015, the Association filed its answer denying specifically and generally each and every allegation in the Complaint and asserting several distinct affirmative defenses.  (See ECF No. 2.)  The same day, the Association filed a Crossclaim against Cross-defendant Solar On Set, LLC ("Solar") alleging the following causes of action: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Express Contractual Indemnity; (4) Comparative Indemnity; (5) Equitable Indemnity; and Declaratory Relief.  (See ECF No. 2-1.)  The Association further alleges that, had any FACTA violations occurred at the County Fair, which it expressly denies, such violations were a direct result of actions and omissions by Solar.  (*See id.*)  After seeking leave of the Court, the Association later filed a Third Party Complaint against Solar

alleging the same causes of action as its Crossclaim on February 8, 2016. (ECF Nos. 7, 9, 10.) Solar denies all material allegations in the Third Party Complaint. (ECF No. 19.)

Following many months of litigation and attending the Court's Early Neutral Evaluation Conference, the parties have reached a proposed settlement of this matter ("Settlement"). (Class Action Settlement Agreement and Release ("Settlement Agreement") (ECF No. 39-1 at 24 ¶ 1.12.) On September 7, 2016, Plaintiff filed an unopposed Motion for Preliminary Approval of Class Action Settlement. (ECF No. 33.) The Court granted preliminary approval on December 13, 2016. (ECF No. 38.) The Court set a final approval hearing for May 11, 2017 at 3:30 p.m. On January 25, 2017, Plaintiff filed a Motion for Award of Reasonable Attorneys' Fees and Costs and Class Representative Enhancement. (ECF No. 39.) On April 21, 2017, Plaintiff filed a Motion for Final Approval of Class Settlement. (ECF No. 42.) The Association has not opposed either motion.

### B. The Certified Class

The Court provisionally certified a class for the purpose of settlement as follows:

[T]hose persons who were issued an electronically printed debit and/or credit card receipt during the San Diego County Fair at the Del Mar Fairgrounds in violation of the truncation requirements of FACTA at any time between September 30, 2010 and December 13, 2016 (the date of preliminary approval of [the Settlement]). (ECF No. 35 at 2.)

The number of Class Members, while not precisely known, is likely more than 100,000 based on an analysis used by the Parties. (ECF No. 39-1 at 28 ¶ 2.31.)

### C. The Settlement Agreement

The Economic Relief

Each admission entrance fee for the 2017 San Diego County Fair (subject to a $750,000 total reduction cap) shall be reduced fifty (50) cents from the then-current fair market value of such admission prices as determined by the Neutral Expert or as otherwise agreed upon between Class Counsel and the Association and the Association's counsel.

To the extent the reduction cap has not been met through the 2017 San Diego County Fair fee reduction, each admission entrance fee for the 2018 San Diego County Fair (subject to a $750,000 total reduction cap, inclusive of the previous year reduction) shall be reduced *pro rata* based on a calculation of the expected 2018 attendance and the remaining amount under the reduction cap. The Neutral Expert shall conduct its analysis and provide its recommendations no later than the Opt-Out and Objection Deadline, and the final agreed upon pricing for the 2017 San Diego County Fair shall be submitted to the Court in connection with the Motion. (*Id.* at 36.)

The Common Fund

The Association and Solar shall also pay a Common Fund of exactly $175,000 ($170,00 by the Association and $5,000 by Solar) which shall be used to compensate (1) the Settlement Administrator for its services in providing publication and website notice and other settlement administration services (as detailed herein), (2) Plaintiff Gillian Brown for an incentive award (subject to Court approval), (3) Class Counsel for their attorneys' fees and costs (subject to Court approval), and (4) the Neutral Expert described above. Neither the Association shall oppose the requests made from the Common Fund, so long as they do not exceed the amounts set forth in Section 2.20 above. Any unawarded or unrequested portion of the Common Fund shall be paid to a privacy protection-related *cy pres* recipient to be proposed to the Court in connection with the Motion for Final Approval. (*Id.* at 36-37.)

Attorneys' Fees and Costs to Class Counsel

Class Counsel may move the Court for an award of attorneys' fees and expenses paid from the Common Fund, not to exceed $150,000. Neither the Association nor Solar shall oppose any request which does not exceed $150,000. The amount of attorneys' fees and costs approved by the Court shall be paid from the Common Fund Settlement Administrator to Class Counsel's Client Trust Account, as directed by written instructions

from Class Counsel.  This payment shall be made no later than the Funding Date[1].  Court approval of attorneys' fees and costs, or their amount, will not be a condition of Settlement. In addition, no interest will accrue on such amounts at any time.  (*Id.* at 33.)

<u>Payment to Class Representative</u>

The Class Representative may ask the Court to award her an incentive payment, not to exceed $5,000, for the time and effort she has personally invested in this Action.  Neither the Association nor Solar shall oppose any request which does not exceed $5,000.  The amount of the incentive payment approved by the Court shall be paid from the Common Fund Settlement Administrator to the Class Representative no later than the Funding Date. In addition, no interest will accrue on such amounts at any time.  (*Ibid.*)

## **DISCUSSION**

**A.  Final Approval of Parties' Settlement**

Rule 23(e)(1)(A) of the Federal Rules of Civil Procedure requires that the court "approve any settlement."  Approval under Rule 23(e) involves a two-step process "in which the [c]ourt first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted."  *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc. ("NRTC"),* 221 F.R.D. 523, 525 (C.D. Cal. 2004) (internal citation omitted).  The Ninth Circuit has noted that, in considering whether to finally approve a class settlement, "there is a strong judicial policy that favors settlements, particularly where complex class action litigation is

---

[1] "Funding Date" means the date, which is no later than twenty-five (25) calendar days after the Effective Date, on which the Association and Solar shall make payments to the recipients of the Common Fund pursuant to Section 9.2 of this Agreement.  (ECF No. 39-1 at ¶ 2.18.)  "Effective Date" means the fifth (5th) business day after the last of the following dates: (A) All Parties, Association's Counsel, Class Counsel and Solar's Counsel have executed this Agreement; (B) If no objections to the Settlement are filed, the date the Court has entered without material change, the Final Approval Order; and (C) If one or more objections to the Settlement are filed, subject to the Court having entered, without material change, the Final Approval order, the final disposition of any related appeals therefrom, and in the case of no appeal or review being filed, expiration of the applicable appellate period.  (*Id.* at ¶ 2.12.)

concerned." *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation"), cert. denied, 459 U.S. 1217, 103 S. Ct. 1219, 75 L.Ed.2d. 456 (1983).

## 1. Notice

One aspect of the Court's role is to ensure that all class members receive adequate notice of the proposed settlement. Class counsel contends the notice program here comports with accepted notice standards for class actions, particularly where the Class Members' contact information is not readily available to the parties. (ECF No. 42 at 12.)

Rule 23(e) requires that "notice of the proposed dismissal or compromise [of class action] shall be given to all members of the class in such manner as the court directs." Fed. R. Civ. P. 23(e). The notice given must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); see also *Manduhano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 835 (9th Cir. 1976) ("To comply with the spirit of [Rule 23(e)], it is necessary that the notice be given in a form and manner that does not systematically leave an identifiable group without notice").

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975). The court's role in reviewing a proposed settlement is to represent those class members who were not parties to the settlement negotiations and agreement. See *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F.Supp.2d 1021, 1027 (N.D. Cal. 1999) (The purpose of Rule 23(e) is to protect "unnamed class

6

members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are unable to secure satisfaction of the individual claims by a compromise") (internal quotations omitted).

"Notice by publication is used when the identity and location of class members cannot be determined through reasonable efforts." *In re Wal-Mart Stores, Inc. Wage and Hour Litigation*, 2008 WL 1990806, at *2 (N.D. Cal. May 5, 2008); see also *In re Tableware Antitrust Litigation*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007) ("Because defendants do not have a list of potential class members, the court agrees with plaintiffs that notice by publication is the only reasonable method of informing class members of the pending class action and the Lenox settlement").

Because the Association does not have the mailing addresses of each County Fair patron who used debit or credit cards during the class period, the Court approved notice by means of publication. (ECF No. 38 at 16-17.) On December 13, 2016, the Court approved the proposed notice plan as it granted preliminary approval of the Settlement as follows: (1) publication on the Internet via a settlement website, (2) a link to the settlement website on the Association's website, and (3) publication on two separate occasions in a regional newspaper in San Diego. (*Id.*) On December 19, 2016, Simpluris, Inc.[2] ("Simpluris") received the Court-approved Legal Notice from Plaintiffs' counsel. (ECF No. 42-2 at 2.)

The Legal Notice advised Class Members of their right to opt out from the Settlement, object to the Settlement, or do nothing, and the implications of each action. (*Id.* at 7.) The Legal notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. (*Id.* at 7-12.) Simpluris also established and maintained a website dedicated to this project ([www.classactionsandiegocountyfair.com](www.classactionsandiegocountyfair.com))[3] to provide additional

---

[2] Simpluris was appointed by the Court as Settlement Administrator to administer the settlement in accordance with the Settlement agreement. (ECF No. 42-2 at 2.)
[3] The website contained hyperlinks to: (1) the Settlement Agreement; (2) Motion for Preliminary Approval of Settlement; (3) the Preliminary Approval Order; (4) Notice of Lodging Settlement; (5)

information to the Class Members.  (*Id.* at 3.)  The website was operational on January 27, 2017 and was accessible 24 hours a day, 7 days a week.  (*Ibid.*)  As of April 21, 2017, the website received 6,906 visits.  (*Ibid.*)  In addition, the short form Legal Notice was published in the Uptown San Diego Examiner on February 8 and 15, 2017, it was also published in the San Diego Business Journal on February 13 and 20, 2017.  (*Ibid.*)

These forms of notice were the best notice practicable under the circumstances and fairly apprised Class Members of their options under the proposed settlement terms.  As such, the Court finds the Class received adequate notice of the settlement and had an adequate opportunity to file a valid claim, opt out, or object to the settlement.  Therefore, the Court finds that Rule 23(e)'s notice requirement has been satisfied.

<u>2.  Fairness of the Proposed Settlement</u>

Class counsel asserts that each of the relevant criteria supports final approval of the Settlement.  (ECF No. 42 at 14-21.)

The court's role, in reviewing "what is otherwise a private consensual agreement negotiated between the parties to a lawsuit, must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice*, 688 F.2d at 625.  In making this assessment, the court balances:

"(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed

---

Notice of Motion and Unopposed Motion for Preliminary Approval of Class Action Settlement; (6) Declaration of Gillian Brown in Support of Final Approval; (7) Notice of Motion and Motion for Award of Reasonable Attorneys' Fees and Costs; (8) Declaration of Daniel F. Gaines in Support of Unopposed motion for Preliminary Approval; (9) Declaration of Daniel F. Gaines in Support of Motion for Award of Reasonable Attorneys' Fees and Costs; (10) Complaint for Damages and Injunctive Relief; and (11) the Legal Notice.  (ECF No. 42-2 at 3.)

settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

This list of factors is not exclusive, "and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). See also *Churchill Vill., L.L.C.*, 361 F.3d at 576 n. 7 ("Because the settlement evaluation factors are non-exclusive, discussion of those factors not relevant to this case has been omitted"); *Young v. Polo Retail, LLC*, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007) (adding as relevant factors "(9) the procedures by which the settlements were arrived at, and (10) the role taken by the plaintiff in that process") (internal citations omitted).

### a. Strength of Plaintiffs' Case

FACTA provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). The Fair Credit Reporting Act (FCRA) creates a private right of action for violations of FACTA and provides that plaintiffs can recover actual or statutory damages, as well as punitive damages, for "willful" violations. See *Nelson v. Chase Manhattan Mort. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002); see also 15 U.S.C. § 1681n. Courts have concluded that a finding approving settlement is favored when there are triable issues as to willfulness under FACTA. See *In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 451 (C.D. Cal. 2014); see also *In re Portal Software, Inc. Securities Litig.*, 2007 WL 4171201, *3 (N.D. Cal. Nov. 26, 2007).

Although Plaintiff maintains that she would succeed at trial, Class counsel acknowledges that there is significant uncertainty concerning how to prove a "willful" violation of FACTA. (ECF No. 42 at 14-15.) For this reason, Class counsel contends that such uncertainty supports final approval of the Settlement as a good compromise for absent Class Members. (*Id.* at 15.) Questions of (1) whether the Association had knowledge of the violating receipts; (2) whether Solar's management of the transactions at the County

Fair cut off any liability which could be imputed to the Association; and (3) whether this error was ever communicated to an agent of the Association where intent could be imputed on the Association still linger unanswered.  As such, the Court similarly concludes that this factor weighs in favor of final approval of the settlement.

### b. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Final approval of settlement is favored when both sides face an all-or-nothing type prospect if settlement is not reached.  *In re Toys R Us*, 295 F.R.D. at 452.  "The expense and possible duration of the litigation should be considered in evaluating the reasonableness of [a] settlement."  *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) (citing *In re Mego Fin. Corp. Securities Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)); see also *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 489 (E.D. Cal. 2010) (in weighing the risk of future litigation, "a court may consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation") (internal quotation marks omitted)); *Polo Retail*, 2007 WL 951821, at *3 ("Because this litigation has terminated before the commencement of trial preparation, factor (2) also militates in favor of the settlement").

Class counsel asserts that this factor weighs in favor of final approval of the Settlement as it avoids the complex and expensive interpretation of FACTA in the class action context, need for a contested class certification motion, and a lengthy trial or trials involving numerous witnesses and experts.  (ECF No. 42 at 15.)  Counsel also points out that, if the Court were to deny a future class certification motion, Class Members would be left without a group remedy and be forced to litigate individual cases in a costly and time-consuming manner.  (*Ibid.*)  Class counsel claims continued litigation of this action against the Association would likely be complex and expensive, due to the size of the class and nature of the claims.  (ECF No. 42 at 15.)  The Court agrees. It is certain that a class certification motion would be contested and costly for Plaintiff to file, Defendant to oppose, and the Court to decide.  Moreover, the Settlement provides immediate recovery for Class

Members rather than the mere possibility of relief in the future. Accordingly, the Court finds this factor militates in favor of approval of the Settlement.

### c. The Risk of Maintaining Class Action Status Throughout Trial

Avoiding the risk of decertification, especially where there are doubts concerning the viability of the class, favors approval of the settlement. See *McKenzie v. Fed. Exp. Corp.*, 2012 WL 2930201, *4 (C.D. Cal. July 2, 2012) ("[S]ettlement avoids all possible risk [of decertification]. This factor therefore weighs in favor of final approval of the settlement"); *Catala c. Resurgent Capital Servs. L.P.*, 2010 WL 2524158, *3 (S.D. Cal. June 22, 2010) ("The avoidance of risk of maintaining class action certification throughout trial favors settlement of this action"); *Lane v. Facebook, Inc.*, 2010 WL 9013059, *4 (N.D. Cal. Mar. 17, 2010) ("The risk that a class action may be decertified at any time generally weighs in favor of approving a settlement") (internal citation omitted).

The Court finds this factor too weighs in favor of granting the Settlement as there is a risk of decertification in this case.

### d. The Amount Offered in Settlement

As the Ninth Circuit has noted, "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is [thus] not be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625 (emphasis original). Rather, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id.* at 624. (Internal citation omitted). "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation and quotation marks omitted).

Class counsel contends the Settlement provides the Class with an immediate monetary benefit and avoids the risk of not succeeding at the liability phase. (ECF No. 42 at 16.) This Court disagrees. As noted, the proposed settlement here awards a fifty (50)

cent reduction from the fair market value of each adult and children admission entrance fee for the 2017 San Diego County Fair (subject to a $750,000 total reduction cap).[4]  Thus, the proposed settlement provides only a form of non-monetary relief and must be carefully scrutinized.   See Fed.R.Civ.P. 23(2)(C)(h), Advisory Committee Note ("Settlements involving nonmonetary provisions for class members…deserve careful scrutiny to ensure that these provisions have actual value to the class").

Other courts have approved the use of gift cards or coupons in lieu of monetary compensation in class action suits.  See *Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, *6-7 (C.D. Cal. July 21, 2008) (approving the use of gift cards, where they provided "significantly more than [each class member] would have earned had Victoria's Secret paid her for her work"); *Young*, 2007 WL 951821, at *4 (approving the use of gift cards in large part because they are transferable; "this enables class members to obtain cash—something all class members will find useful").   The amount of the settlement weighs in favor of approval as long as the amount to be received would not be *de minimus*, considering the difficulties, risk and likelihood of proving actual damages and willfulness. See *In re Toys R Us*, 295 F.R.D. at 454 (finding a settlement amount representing 5% to 30% of possible recovery weighed in favor of approval given plaintiffs would have been unable to prove willfulness and recover any damages at all); see also, e.g.,   *In re Mego Financial Corp. Securities Litigation*, 213 F.3d 454, 459 (9th Cir. 2000) (holding that, given the difficulties inherent in complex litigation, a settlement that paid plaintiffs on-sixth of their potential recovery was fair and adequate).

Although the precise number of Class Members remains undetermined, Plaintiff projects the maximum exposure to the Association at up to $10,000,000.[5]  (ECF No. 42-1 at 5.)  Hypothetically, if each Class Member sued the Association individually and proved

---

[4] Based on a review of current economic research, the 2017 County Fair's ticket prices would normally be confirmed as $18.50 for one adult ticket and $11.50 for one child ticket.  (ECF No. 42-4 at 10.)
[5] Total amount computed at the rate of $100 per allegedly defective receipt issued.  (ECF No. 42-1 at ¶ 17.)

that it acted willfully, then he or she could recover between $100 and $1,000 in statutory damages. 15 U.S.C. § 1681n. A fifty cent ($0.50) reduction in admission entrance fee, therefore, amounts to *less than one percent* of each Class Members' possible recovery. Accordingly, the Court finds the Settlement award amount is *de minimus*.

Careful scrutiny of the Settlement award amount illustrates that a significant discount is to be expected in exchange for avoiding the uncertainties, risks, and costs of further litigation. Class counsel asserts the Settlement's proposed discount is reasonable and fair in light of the facts of the case, the litigation risks, the class certification risks, and other FACTA case settlements. (ECF No. 42 at 16.) Here, Class Members suffered no actual monetary loss as a result of the Association's alleged conduct. The Association also maintains that Plaintiff could not prove "willful" conduct on the Association's part as it did not discover the deficient receipts and hired Solar, a company the Association trusted was an expert in installing point of sale systems and certified that its system was legally compliant. (ECF Nos. 2 at 2; 42 at17.) Due to the lack of record maintenance, it would be impossible to put consideration directly into Class Members' pockets without a substantially expensive claims process. Consequently, the parties agreed that a reduction in admission fee is most likely to yield the highest benefit to a potential Class Member – future fairgoers. The Court finds that a discounted settlement amount is warranted under the totality of the circumstances.

The Court finds the amount of the proposed settlement does not weigh in favor of approval of the Settlement. As noted, there is no monetary benefit to the Class Members. The value of the award, which amounts to a fifty cent ($0.50) coupon, is *de minimus*. Moreover, the fifty cent ($0.50) reduction in fair admission fee is capped at $750,000, covering 1.5 million fairgoers. Of note, the County Fair attracted more than 1.6 million visitors in 2016, more than 1.5 million visitors the last two years, and has grown to 26 days in length. (ECF No. 42-4 at 3-4.) Consequently, it is likely that not all 2017 County fairgoers will receive the admission fee reduction benefit. Considering the *de minimus* value of the settlement to Class Members and likelihood that not all members will even

enjoy the benefit, the Court finds the amount of the Settlement factor does not weigh in favor of approval.

### e. The Stage of the Proceedings and Extent of Discovery Completed

"The extent of discovery may be relevant in determining the adequacy of the parties' knowledge of the case." *NRTC*, 221 F.R.D. at 527 (internal quotation marks and citation omitted). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id* (internal quotation marks and citation omitted). The more the discovery completed, the more likely it is that the parties have "'a clear view of the strengths and weaknesses of their cases.'" *Young*, 2007 WL 951821, at *4 (quoting *In re Warner Communications Sec. Litig.*, 618 F.Supp. 735, 745 (S.D.N.Y. 1985)).

Class counsel contends that the Parties negotiated the Settlement with ample knowledge of the strengths and weaknesses of this case and the amounts necessary to compensate Class Members for their estimated damages. (ECF No. 42 at 18.) Specifically, counsel states the Settlement was reached after the parties exchanged substantive information through discovery and apprised each other of their respective factual contentions, legal theories, and defenses. (*Ibid.*) Counsel also states, "The Parties engaged in extensive good-faith, arms-length negotiations, including a full-day early neutral evaluation session" before the Court. (*Ibid.*) Counsel notes that Defendant did not dispute that it in fact printed prohibited information on customers' receipts but challenged class certification, willful conduct, and liability for statutory damages. (*Ibid.*) Counsel avers that, at the time of settlement, it was apparent that continued litigation presented numerous legal risks for Plaintiff to certify the class, prove liability, and defeat any appeals relating to liability, damages or class certification. (*Id.* at 19.)

As such, notwithstanding an abbreviated discovery period, the Court concludes that the settlement was reached at a stage where the parties had a "clear view of the strengths and weaknesses of their cases." See *True v. Am. Honda Motor Co.*, 749 F.Supp.2d 1052,

14

1078 (C.D. Cal. 2010) (finding that "discovery ha[d] been sufficient to permit the parties to enter into a well-informed settlement, and this factor weighs in favor of approval"). Likewise, the Court finds this factor also weighs in favor of approving the Settlement.

### f. The Presence of a Government Participant

An order giving final approval of a proposed settlement may not be issued earlier than 90 days after of the dates on which the appropriate Federal official and the appropriate State official are served with notice. 28 U.S.C. § 1715(d). The Association notified the Attorney Generals of the United States and California on September 19, 2016. (ECF No. 42-1 at 10.) More than 90 days have passed since notice was provided and the parties have received no objections from any state or federal official. (*Ibid.*) Therefore, the Court may issue an order approving this Settlement.

### g. The Experience and Views of Counsel

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979) (citations omitted). However, the weight given to this factor is tempered somewhat by counsel's "obvious pecuniary interest in seeing the settlement approved. *Young*, 2007 WL 951821, at *5. Courts still have concluded that counsel's views weigh in favor of approving the settlement as it declines to discount the well-considered views of counsel entirely. See *Fernandez* 2008 WL 8150856, at *7 n. 32.

In the Court's Preliminary Approval order, it recognized that "Class Counsel ha[s] significant experience in handling class actions. For example, Class Counsel's firm has been involved in over 100 class actions." (ECF No. 38 at 15.) Counsel asserts they have significant experience in complex class litigation, including numerous FACTA and other privacy related class actions. (ECF No. 42 at 19.) Class counsel believe the Settlement to be an excellent result for the Class and opine that it is fair, adequate, reasonable, and in the

best interest of the Class. (*Ibid.*) Relying on counsel's representations, the Court finds this factor weighs in favor of approving the Settlement.

### h. Class Members' Reaction to the Settlement

In order to gauge the reaction of other class members, it is appropriate to evaluate the number of requests for exclusion, as well as the objections submitted. See *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) ("In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors"); *Pallas v. Pac. Bell*, 1999 WL 1209495, *6 (N.D. Cal. July 13, 1999) ("The greater the number of objectors, the heavier the burden on the proponents of settlement to prove fairness"). Here, Simpluris received no requests for exclusion from or any objections to the Settlement. (ECF No. 42-2 at 3.) Accordingly, the Court interprets the complete non-opposition to the Settlement as a strong indication of the Class Members' support.[6] For this reason, the Court finds the Class Members' reaction weighs strongly in favor of approving the settlement.

### i. Other Factors

As noted, two additional factors should be considered when determining the fairness of a proposed settlement: (1) the process by which settlement was achieved and (2) the involvement of the named plaintiffs in the process. *Young v. Polo Retail, LLC*, 2007 WL 951821, *3 (N.D. Cal. Mar. 28, 2007) (adding as relevant factors "(9) the procedures by which the settlements were arrived at, and (10) the role taken by the plaintiff in that process") (internal citations omitted).

Here, the parties engaged in extensive good-faith, arms-length negotiations, including a full-day early neutral evaluation session conducted by the Court. Therefore,

---

[6] As of the date of declaration, the Settlement website had been operational since January 27, 2017, accessible 24 hours a day, 7 days a week, and received 6,906 visits. (ECF No. 42-2 at 3.) Thus, the Court reasons that the Class Members' total non-opposition to the Settlement was not due to a lack of awareness that the Settlement existed.

the Court finds that the process by which the Settlement was reached weighs in favor of approving the Settlement.

Plaintiff, particularly Gillian Brown, the class representative, played an active role in the settlement process by communicating regularly with her attorneys regarding what would be a fair resolution. (ECF No. 39-2 at 3.) Brown also attended the full-day early neutral evaluation to try and settle the case. (*Ibid.*) Given this information, the Court concludes that Plaintiff was actively involved in settlement negotiations and that this factor weighs in favor of approval.

### j. Signs of Collusion

The Ninth Circuit has explained that, in addition to evaluating the fairness of the settlement terms, the district court should be watchful for "subtle signs" that class counsel and the class representatives permitted self-interest to trump their obligation to ensure a fair settlement for the class as a whole. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). In *Bluetooth*, the Ninth Circuit identified three possible signs of collusion:

"(1) when the settlement terms result in class counsel receiving a disproportionate share of the settlement, or when the class receives no monetary compensation but counsel receive an ample award of attorneys' fees;

(2) the presence of a clear sailing agreement that carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for…accepting an unfair settlement; and

(3) when the parties arrange for fees not awarded to revert to defendants, rather than being paid into the class fund." *Id.* (citations and quotation marks omitted). The Ninth Circuit noted that this list is not exclusive, but offered it as guidance to lower courts regarding the type of provisions that require "greater scrutiny than ordinarily demanded" in assessing the overall fairness of the settlement. *Id.* at 949.

As to the first sign of collusion, other circuits have reversed settlements as troubling when a class representative and class counsel are essentially paid to go away and foreclose

other class members' right to the benefits of aggregation in a class. See *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 882 (7th Cir. 2000) ("[T]he fact that one class member receives $2,000 and the other 200,000+ [get] nothing is quite enough to demonstrate that the terms should not have been approved"). Here, it is established above that the class is not receiving any monetary compensation. See The Amount Offered in Settlement section. The total value of the current Settlement package is $925,000, of which $175,000 is earmarked to compensate the Common Fund. (ECF No. 39 at 16.) This Common Fund is funded by the Association and Solar to compensate for "any attorneys' fees and costs awarded to Class Counsel by the Court (not to exceed $150,000)…and any incentive award ordered by the Court to be paid to the Class Representative (not to exceed $5,000)," among other payments. (ECF No. 39-1 at 28, 36-37.) The proposed Settlement deems "all claims, causes of action, suits, obligations, debts, agreements, promises, liabilities, damages, losses controversies, costs, expenses, and attorneys' fees of any nature whatsoever" fully released as of the Effective Date. (ECF No. 39-1 at 43.)

This Court believes the terms described above are indicative of the first sign of collusion. Essentially, the only two parties receiving cash value from the Settlement potentially are the class representative and class counsel. In addition, the Settlement forecloses unnamed class members from bringing a future claim. However, it unlikely that other class members would bring an individual claim for statutory damages due to the litigation risk. Moreover, it is further unlikely that other class members have maintained the 2015 County Fair receipt or could prove any actual damages. Class counsel have fought diligently for the class throughout this litigation and has achieved some form of benefit for the class. Thus, the Court cautiously finds the first sign of collusion does not exist here.

As to the second sign of collusion, "[I]n general, a clear sailing agreement is one where the party paying the fee agrees not to contest the amount to be awarded by the fee-setting court so long as the award falls beneath a negotiated ceiling." *Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 520 n. 1 (1st Cir. 1991). Clear sailing provisions are troubling on several levels. "[T]he very existence of a clear sailing provision increases the

likelihood that class counsel will have bargained away something of value to the class." *In re Bluetooth*, 654 F.3d at 948 (citation omitted). "Such a clause deprives the court of the advantages of the adversary process. The source of the proposed payment renders it improbable that class members will come forward to challenge the reasonableness of the requested fee. Meanwhile, the payor is bound by contract not to contest the application." *Weinberger*, 925 F.2d at 525. Clear sailing agreements must be scrutinized to ensure that they do not result in unfair awards of attorneys' fees. See *Id.* at 523 ("[T]he approval function has routinely been extended to embrace fees, whether or not pre-negotiated, in those cases where the plaintiffs' attorneys are to be paid out of a common fund (and where, consequently, there is an inherent tension between the interests of the class and the interests of the lawyers)").

Courts have concluded that a clear sailing provision is not fatal when the class stands to receive a monetary award greater than it might have received had the case proceeded to trial. See *In re Toys R Us*, 295 F.R.D. at 458 ("The absence of a "kicker provision"[7] in the parties settlement and the fact that the class is receiving reasonable value reduces the likelihood that the parties colluded to confer benefits on each other at the expense of class members.").

The parties' agreement states:

"Class Counsel may move the Court for an award of attorneys' fees and expenses paid from the Common Fund, not to exceed $150,000. Neither the Association nor Solar shall oppose any request which does not exceed $150,000." (ECF No. 39-1 at 33.) The Court finds that this is a clear sailing provision. As anticipated, the Court was deprived of an adversarial discussion of the reasonableness of attorneys' fees both in brief and at oral argument. Like *In re Toys R Us*, no "kicker provision" exists here and the class is receiving

---

[7] A "kicker agreement" reverts unpaid attorneys' fees to the defendant rather than to the class, this amplifies the danger of collusion already suggested by a clear sailing provision. *In re Bluetooth*, 654 F.3d at 949.

a benefit, granted a nonmonetary benefit, it likely would not have received if members proceeded with further litigation. Accordingly, the provision similarly does not raise an inference of collusion that warrants invalidation of the Settlement as a whole.

The third sign of collusion is absent in this case as the Settlement agreement contains a *cy pres* provision for any awarded or unrequested portion of the Common Fund to be paid to a privacy protection-related recipient.

Nonetheless, the Court considers the nature of the attorneys' fees provision below in evaluating the reasonableness of the fees sought, so as to ensure that class members have been afforded adequate relief, and that the fees their lawyers receive are proportionate to the value of the classes' recovery.

### k. Balancing the Factors

The court's determination [concerning the fairness and adequacy of a proposed settlement] is nothing more than an amalgam of delicate balancing, gross approximations and rough justice. *Officers for Justice*, 688 F.2d at 625 (citation omitted). "[I]t must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation." *Id.*

Having considered the relevant factors, the Court concludes that the settlement is fair and adequate after weighing all the relevant factors. In addition, the class certification requirements have remained satisfied since the Court provisionally certified the class on December 13, 2016. (ECF No. 38). Accordingly, the Court certifies the settlement class and GRANTS Class counsel's motion to approve the Settlement (ECF No. 42).

## B. Motion for Attorneys' Fees, Costs, and Incentive Awards

The Court now turns to class counsel's motion for fees, costs, and incentive payments. Rule 54(d)(2) of the Federal Rules of Civil Procedure specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of…fees as an element of damages to be proved at trial," the rule itself does not authorize the awarding of fees. In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees. *In*

*re Toys R Us*, 295 F.R.D. at 459 (citation omitted). Rule 23(h) authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed.R.Civ.P. 23(h). Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee is reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation marks omitted). The parties' Settlement agreement provides that the Association will not oppose an award of attorneys' fees and costs, not to exceed $150,000. (ECF No. 39-1 at 33.) It further provides for the payment of an incentive award, not to exceed $5,000, to the class representative. (*Id.*)

## 1. Attorneys' Fees

Plaintiffs seeks a fee award under the percentage of the common fund method. (ECF No. 39 at 17-19.) The Court does not agree. See 28 U.S.C. § 1712, Class Action Fairness Act ("CAFA").

CAFA provides that attorneys' fees awarded in connection with a class action coupon settlement must be based on the value to class members of redeemed coupons. See 28 U.S.C. § 1712(a). "If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be construed to prohibit application of time class counsel reasonably expended working on the action." *Id.* at § 1712(b)(1). A lodestar with a multiplier method can be used to determine attorney's fees. *Id.* at § 1712(b)(2). However, lodestar fees may only be awarded if the class obtains non-coupon relief. *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1185 (9th Cir. 2013). Where a settlement only provides for coupon relief for the class, the entire attorneys' fee award is attributable to the awards of coupons. *Id.* at 1182. In such cases, "the court must determine a reasonable contingency fee based on the actual redemption value of the coupons awarded. *Id.* at 1184. Therefore, the Court finds that the percentage-of-the-fund method does not apply here.

Here, the reduced admission price benefit is a coupon as it requires the Class to return to the County Fair and spend money in order to realize the settlement benefit. *Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *5 (N.D. Cal. Nov. 16, 2007); see *Kearney v. Hyundai Motor Co.*, 2013 WL 3287996, at *7 n. 5 (C.D. Cal. June 28, 2013) ("A coupon settlement is one that provides benefits to class members in the form of a discount towards the future purchase of a product or service offered by the defendant") (internal quotation marks omitted). "The distinction between a coupon and a voucher is that a coupon is a *discount* on merchandise or services offered by the defendant and a voucher provides for *free* merchandise or services." *Foos v. Ann, Inc.*, 2013 WL 5352969, at *2 (S.D. Cal. Sept. 24, 2013) (emphasis in original). The Class here has no other option, such as a voucher or other cash-like benefit. See *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949-50 (9th Cir. 2015). The Settlement is therefore a coupon settlement as the Settlement provides Class Members no benefit unless they attend the 2017 County Fair.

Accordingly, the Court is reluctant to award the requested lodestar method. Nonetheless, the Court has gone through the lodestar method analysis below and it could be applied if class counsel persuades the Court that the Class is due to receive some relief *other than* simply the specified fifty cent coupon. *Grays Harbor Adventist Christian School v. Carrier Corp.*, 2008 WL 1901988, at *1 ("Because the attorneys' fees will be paid separately by [defendant] without reducing the relief available to the Class, the lodestar method is appropriate"). Other circuits have rejected the majority view in *HP Inkjet* in holding instead that 28 U.S.C. 1712(a) "does not…prohibit the use of the lodestar method for coupon settlements." See *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708-09 (7th Cir. 2015); *In re HP Inkjet Printer Litig.*, 716 F.3d at 1187 (Berzon, J., dissenting) ("On my reading of the statute, CAFA allows the use of a lodestar to calculate attorney's fees…whether the relief obtained for the class involves, in whole or in part, coupons, or whether it does not."). The Court finds that the circumstances do not warrant rejecting the majority in *HP Inkjet*.

The Court must determine whether a contingency fee award would be reasonable based on the actual redemption value of the coupons awarded. *In re HP Inkjet Printer Litig.*, 716 F.3d at 1184. However, class counsel cannot submit the necessary evidence until after the 2017 County Fair. At the final approval hearing, class counsel did not agree that the Settlement should be characterized as a coupon settlement. For that reason, the parties agreed to submit further briefing to address the Court's following questions:

(1) Whether the Settlement should be characterized as a coupon settlement?

(2) If this is a coupon settlement, whether the Court can determine a reasonable contingency fee without actual evidence of the value of the redemption?

(3) Whether the Court can use the total reduction cap ($750,000) as the actual redemption value or the fifty cent ($0.50) reduction in admission price?

(4) Whether there is a form of non-coupon relief the Class is due to receive which allows the Court to use the lodestar method to calculate attorneys' fees under 28 U.S.C. § 1712(b) and *HP Inkjet*?

Thus, the orders class counsel and defense counsel to file a renewed motion for attorneys' fees[8] addressing the above issues on or before **May 25th, 2017**.

### a. Whether Class Counsel's Attorneys' Fees Request Is Reasonable

The lodestar figure is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensly*, 461 U.S. at 433. The lodestar "presumptively provides an accurate measure of reasonable attorney's fees. See *Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994); *Clark v. City of Los Angeles*, 803 F.2d 987, 990 (9th Cir. 1986). A court may increase of decrease the lodestar amount in rare or exceptional cases. See *Blum v. Stenson*, 465 U.S. 886, 898-901 (1984); *Harris*, 24 F.3d at 18; *Clark*, 803 F.2d at 990-91. The court in *In re Bluetooth* instructs as follows:

"The court may adjust [the lodestar] upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of

---

[8] The Court also orders that the parties' briefs are ten (10) pages maximum.

representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment. Foremost among these considerations, however, is the benefit obtained for the class. Thus, where the plaintiff has achieved only limited success, counting all hours expended on the litigation—even those reasonably spent—may produce an excessive amount, and the Supreme Court has instructed district courts to instead award only that amount of fees that is reasonable in relation to the results obtained." *In re Bluetooth*, 654 F.3d at 941-42.

Here, class counsel's fee award request is $145,130.29, based on counsel's total proffered hourly rates of $93,070, and a multiplier of 1.56. (ECF No. 39 at 25.)

## 1. Reasonableness of Counsel's Hourly Rates

To assist the court in calculating the lodestar, a plaintiff must submit "satisfactory evidence…that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895-96 n. 11. The relevant community is that in which the district court sits. See *Schwarz v. Sec'y of Health and Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995). Declarations regarding the prevailing market rate in the relevant community suffice to establish a reasonable hourly rate. See *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996) (noting that declarations from attorneys in the community can provide adequate proof of the reasonableness of counsel's rates). Courts also use survey data to evaluate the reasonableness of attorneys' rates. See *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002) ("The parties presented two surveys of hourly rates, one reporting fees received by seven Twin Cities class action firms and the other reporting fees received by sixty-two firms doing a variety of work around the state. The court set individual hourly rate at the median of the class action survey and near the upper limit of the statewide survey, also taking into account the number of years an attorney had been admitted to practice"); *Am. Petroleum Inst. V. United States EPA*, 72 F.3d 907, 912 (D.C. Cir. 1996) ("Petitioners have provided support for the reasonableness of their rates through affidavits and a survey of rates and we hold that these rates are reasonable").

1
2
3
4
5
6
7
8
9
10
11

Class counsel contends his firm's attorney's hourly rates are reasonable and have been approved by many courts in the Los Angeles area, San Francisco Bay area, and other counties throughout California. (ECF No. 39 at 25.) Specifically, counsel seeks to have the Court approve Gaines & Gaines attorneys' rates as follows: $650 per hour for Kenneth S. Gaines[9] (1970 graduate of UC Hastings College of Law); $300 per hour for third-year associate Evan S. Gaines (graduate of Michigan State University College of Law); $350 per hour for fifth-year associate Sepideh Ardestani (2009 J.D. graduate of Whitter School of Law and 2010 L.L.M. graduate of Santa Clara School of Law); $450 per hour for the firm's managing shareholder Daniel F. Gaines[10] (2007 graduate of University of Virginia School of Law); and $500 per hour for Alex P. Katofsky[11] (1999 graduate of University of the Pacific McGeorge School of Law). (*Id.* at 25-26.)

12
13
14
15
16
17
18
19
20

However, class counsel fails to proffer evidence that these rates are reasonable and merely cites two Ninth Circuit decisions to justify its lodestar calculation as reasonable. (ECF No. 39 at 25.) Specifically, class counsel cites *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008), to contend that courts should apply rates commensurate with hourly rates for private attorneys conducting non-contingent litigation of the same type.[12] (*Id.*) Yet, class counsel fails to note that, in *Camacho*, the Ninth Circuit held that the district court failed to identify the relevant community in awarding attorney's fees and remanded the case to determine a reasonable hourly rate. *Camacho*, 523 F.3d at 979. The

21
22
23
24
25
26
27
28

[9] Class counsel declares Kenneth S. Gaines rate of $650 per hour is based on his over four decades of practice, his vast litigation experience in complex litigation, and his involvement in class actions. (ECF No. 39-1 at 9.)

[10] Class counsel declares his rate of $450 per hour is reasonable and prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. (ECF No. 39-1 at 9.)

[11] Class counsel declares Mr. Katofsky's $500 hourly rate is reasonable because he is a highly skilled and experienced litigator with over 17 years of experience in high stakes litigation. (ECF No. 39-1 at 9.)

[12] Counsel also relies on *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 (9th Cir. 2002) to contend that reasonable hourly rates are based on each attorney's current hourly rates. (ECF No. 39 at 25.) Class counsel's reliance on *Vizciano* does not advance his argument here because, in the portion counsel cites, the Ninth Circuit was merely reviewing a district court's application of the lodestar method as a cross-check of the percentage method. *Vizciano*, 290 F.3d at 1050.

*Camacho* court also instructed the district court to set a proper amount of fees by identifying facts and discussing declarations[13] which helps the court determine an hourly rate that is comparable for attorneys with similar, skill, experience, and reputation. *Id.* at 980. Of note, the Ninth Circuit recognized that "cases decided in the Northern District offer a wide spectrum of reasonable hourly rates, even for work performed by the same attorney." *Ibid.*

Unlike the fee applicant in *Camacho*[14], class counsel here has not provided this Court with satisfactory evidence that the requested rates are in line with those prevailing for similar work in the relevant community, the Southern District of California. In fact, class counsel attempts to justify his attorney's fee award request by contending that the proffered rates have been approved in other districts and counties. (ECF No. 39 at 25.) Class counsel only provides his declaration to support his motion for attorneys' fees. (See ECF No. 39-1.) In his declaration, class counsel asserts that it is difficult to determine an hourly rate of attorneys of similar skill and experience in the relevant community due to the scarcity of hourly fee paying clients in class action litigation. (*Id.* at 10.) Consequently, counsel avers that there is no customary billing rate, so the nature of class action work should be strongly considered. (*Ibid.*) Although the Court trusts that counsel is making a fair representation, it is hesitant to simply affirm class counsel's representation regarding the reasonableness of the attorney's hourly rate without corroborating evidence or declaration(s). The Court

---

[13] In *Camacho*, the Ninth Circuit instructs, "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." As we have noted, "[a]ffidavits of the plaintiff's attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases…are satisfactory evidence of the prevailing market rate." *Camacho*, 523 F.3d at 980.

[14] In *Camacho*, Camacho filed declaration from her three attorneys and also submitted declarations from two other attorneys. One of those attorneys declared that the requested rates were within the range of prevailing market rates for attorneys with similar work experience in the Northern District. Similarly, the second attorney declared that Camacho's attorneys' rates were consistent, if not slightly lower than, the prevailing market rates for attorneys with comparable skill, qualifications, experience, and reputations. *Camacho*, 523 F.3d at 980.

recognizes that class counsel's firm sits in the Central District of California, but it is possible for counsel to contact the Association's local counsel for survey or declaration assistance. Moreover, class counsel's representations do not mention a prevailing rate for similar work by attorneys of comparable skill and experience in the Southern District of California. To that extent, the Court orders class counsel to submit supporting declarations or survey data to establish the reasonableness of their requested rates on or before **May 25th, 2017**.

### 2. Reasonableness of Hours Expended

A court may award attorneys' fees only for the number of hours it concludes were reasonably expended on the litigation. *Hensley*, 461 U.S. at 434 ("[Counsel] should make a good faith effort to exclude…hours that are excessive, redundant, or otherwise unnecessary"). "[T]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of th[e] hours worked…" *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992)); see *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("[C]ounsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended"); *Gucci Am., Inc. v. Pieta*, 2006 WL 4725707, at *2 (C.D. Cal. July 17, 2006) (holding that, although a fee applicant "is not required to record in great detail how each minute of [his] time was expended…[he must] list[ ] [the] hours and identity[ ] the general subject matter of [the] time expenditures"); *Pac. W. Cable Co. v. City of Sacramento*, 693 F.Supp. 865, 870 (E.D. Cal. 1988) ("The cases do not indicate that every minute of an attorney's time must be documented; they do, however, require that there be adequate description of how the time was spent, whether it be on research or some other aspect of the litigation…").

Class counsel reports that all attorneys have spent 198.7 hours on the case since pre-lawsuit interviews in late September 2015. (ECF No. 39-1 at 2, 71.) Specifically, class counsel, Daniel F. Gaines, has spent a total of 70.3 hours on this matter. (*Id.* at 8.) It is declared that other attorney spent time on this matter as follows: Kenneth S. Gaines (24.7

hours), Alex P. Katofsky (65.1 hours), Evan S. Gaines (13.6 hours), and Sepideh Ardestani (25.0 hours). (*Id.*) Class counsel attached an Attorney Time/Task Chart to his motion to reflect the work performed by each attorney in those hours.[15] (*Id.* at 71.)

Daniel F. Gaines' time record shows that he billed 70.3 hours on the inception of this case or about 3.5 hours per month. (*Id.* at 71.) Most of his time, approximately 37.6 hours, was dedicated to pre-lawsuit interviewing, investigation and research, early neutral evaluation conference, and research and preparation of the Settlement. (*Ibid.*) He also spent 2.3 hours as he co-authored the Complaint, performed related research, and made related communications. (*Ibid.*) He then spent approximately 5.4 hours researching and performing work needed to file the preliminary approval motion, notice of lodging, and motion for attorneys' fees. (*Ibid.*)

The Court finds that the time counsel spent on this litigation, as detailed above, was reasonably expended. However, the Court acknowledges that counsel may have overestimated his time spent in the "[ESTIMATED]" row of the chart. (*Ibid.*) In that row, counsel estimates he will spend an additional twenty-five (25) hours "to reply to objections, if any, attend hearing on motion for final approval, class member communications, administration of settlement, close file." (*Ibid.*) The Court finds this time estimation is unreasonable under the circumstances as he did not attend the final approval hearing, there are no objections to respond to, a coupon settlement such as this does not need to be administered, and, if it did, Simpluris has already been selected to provide notice to class members.[16] (*Ibid.*) The Court estimates it should take six (6) hours to travel and attend the final approval hearing. Thus, the Court finds that 45.3 hours is a reasonable indication of the time spent on this case.

---

[15] The Court assumes class counsel's time record accounts for time spent on the case since September 30, 2015 as the chart he submitted does not illustrate any dates the work was performed.

[16] The Court recognizes that class counsel must travel from the Los Angeles area to San Diego for the final approval hearing, but the Court finds that traffic between the cities will not take counsel 25 hours even on the worst day.

Similarly, the Court finds the overall number of hours provided by all other counsel are reasonable, except that each attorney's "[ESTIMATED]" time is capped at a reasonable time necessary to close the file because Mr. Katofsky was the only attorney present at the final approval hearing. If counsel objects, they may be heard through supplemental briefing and submit detailed records indicating more future time was used in a reasonable manner on or before **May 25th, 2017**.

Katofsky's time record reveals that he billed 65.1 hours since the inception of this case or about 3.25 hours per month. (*Ibid.*) It is reported that Katofsky spent 6.9 hours performing preliminary work up until the Complaint was filed. (*Ibid.*) Katofsky spent 17.8 hours doing work related to the early neutral evaluation conference. (*Ibid.*) He then spent seven (7) hours performing work related to the Settlement. (*Ibid.*) The balance of his work time, approximately 8.4 hours, was spent preparing the preliminary approval order and the motion for attorneys' fees. (*Ibid.*) Similar to Gaines, Katofsky estimated he would spend twenty-five (25) hours doing future work. (*Ibid.*) Unfortunately, Mr. Katofsky's estimated time value needs to be cut to reflect a reasonable amount of time expended on this case, and the Court estimates his attendance at the final approval hearing should take six (6) hours total. Accordingly, the Court orders Mr. Katofsky to submit an updated time/task chart to provide a reasonable indication of the time spent on this case.

Given the overestimation of future time to be spent litigating this case, the Court finds 198.7 hours is unreasonable.

### 3. Calculation of the Lodestar Figure

For the reasons stated above, the Court concludes that the rates and hours requested by class counsel are unreasonable. Thus, a lodestar figure cannot be calculated at this time.

### 4. Whether the Court Should Adjust the Fee Award

Once the court has determined the lodestar, it should consider whether an award of that magnitude is reasonable, taking into account "'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon*, 150 F.3d at 1029).

As the Ninth Circuit has made clear, the most important factor is the benefit obtained for the class. *Id.* at 942; see also *McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (the ultimate reasonableness of the fee "is determined primarily by reference to the level of success achieved by the plaintiff"); see also *In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008) ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award").

Currently, we have no lodestar figure to adjust. In this case, none of the factors favors either an upward or downward departure from the lodestar figure. The Settlement did not confer a monetary benefit on the Class. However, the Settlement does provide the Class with a benefit that the members likely would not have received had they pursed claims on an individual basis. In light of the outcome considering Plaintiff's risk in further litigation, the Court declines to adjust the fee award downward.

### b. Conclusion Regarding Attorneys' Fees

The Court will issue a separate discussing the merits of the attorneys' fees after it receives supplemental briefing from the parties as instructed above.

## 2. Whether Counsel's Request for Expenses is Reasonable

The district court must also determine an appropriate award of costs and expenses. See Fed.R.Civ.P. 23(h) ("In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement"). "Expenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable." *Rutti v. Lojack Corp., Inc.*, 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

Counsel seeks $4,869.71 in expenses. (ECF No. 39 at 28.) Counsel declares that the incurred costs included filing fees, travel expenses, parking fees, research fees, courier charges, mailing costs, and Federal Express charges. (*Id.* at 73.) The Court finds the expenses are reasonable and the supporting documentation adequately confirms the

expenditures.  (ECF No. 39-1 at 73.)  Thus, the Court approves the award for costs and expenses.

**3. Incentive Awards**

An individual who joins her claims with those of a class "disclaim[s] any right to a preferred position in the settlement [of those claims]."  *In re Oracle Sec. Litig.*, 1994 WL 502054, *1 (N.D. Cal. June 18, 1994) (quoting *Officers for Justice*, 688 F.2d at 632). Nonetheless, it is well-established that the court may grant a modest incentive award to class representatives, both as an inducement to participate in the suit and as compensation for time spent in litigation activities, including depositions.  See *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (holding that the district court did not abuse its discretion in awarding an incentive award to the class representatives); *Matter of Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992) (stating that an incentive award in such amount "as may be necessary to induce [the class representative] to participate in the suit" is appropriate).

The Settlement provides Gillian Brown, the class representative, an incentive payment of $5,000.  (ECF No. 39-1 at 36-37.)  This proposed award is consistent with the amount courts typically award as incentive payments.  See, e.g., *In re Mego Fin. Corp.*, 213 F.3d at 463 (approving a $5,000 incentive award for each class representative); *Faigman v. AT&T Mobility LLC*, 2011 WL 672648, *5 (N.D. Cal. Feb. 16, 2011) (approving an incentive payment of $3,333.33 for each of three class representative, and noting that $5,000 incentive payments are presumptively reasonable in that district); *Dennis v. Kellogg Co.*, 2010 WL 4285011, *3 (S.D. Cal. Oct. 14, 2010) (preliminarily approving an incentive award of $5,000).

Whether to authorize an incentive payment to a class representative is a matter within the court's discretion.  The criteria courts consider in determining whether to approve an incentive award include:

"(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class

31

representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation[;] and [ ] (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal 1995).

### a. The Risk to the Class Representative in Commencing Suit

When a class representative shoulders some degree of personal risk in joining the litigation, such as workplace retaliation or financial liability, an incentive award is especially important. See *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). The record contains no information suggesting that Plaintiff risked retaliation. However, Plaintiff's declaration indicates that she could be responsible for paying the attorneys' fees and costs incurred by the Association if the Class lost the case. (ECF No. 39-2 at 3.) Accordingly, the Court finds Plaintiff shouldered some degree of personal risk in the form of financial liability risk. As such, this factor weighs in favor of an incentive award.

### b. The Notoriety and Personal Difficulties Encountered by the Class Representative

There is no particular notoriety associated with this litigation, nor is there any indication that the named plaintiffs have been subjected to media attention as a result of their involvement in the case. See, e.g., *Wilson v. Airborne, Inc.*, 2008 WL 3854963, *13 (C.D. Cal. Aug. 13, 2008). However, the fact that there was no media attention does not preclude approval of an incentive payment. See *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, *4 (D. Or. Nov. 13, 2006). As no significant media attention or other difficulties have been identified, the Court finds this factor weighs against authorizing a large incentive payment.

### c. The Amount of Time and Effort Expended by the Class Representatives

An incentive award is appropriate where the "class representatives remained fully involved and expended time and energy during the course of the litigation." *Razilov*, 2006 WL 3312024, at *4. This factor weighs in favor of making incentive awards when plaintiffs expended reasonable efforts on the litigation and were involved in the

proceedings. See *In re Heritage Bond Litig.*, 2005 WL 15944403 *14 (C.D. Cal. June 10, 2005) (activities such as "responding to discovery, preparing for, traveling to and attending their depositions and maintaining contact with Plaintiffs' counsel to monitor the litigation" gave rise to an inference that class representatives were "actively involved in every aspect of…litigation"). Here, Plaintiff declares she assisted in the discovery and settlement process, communicated regularly with her attorneys to discuss a fair resolution, and attended the early neutral evaluation conference to try and settle the case. (ECF No. 39-2 at 3.) For these reasons, the Court finds that she expended a fair amount of time and energy during the course of the litigation. The Court therefore finds this factor favors an incentive award.

### d. The Duration of the Litigation

When litigation has been protracted, an incentive award is especially appropriate. See *Van Vranken*, 901 F.Supp. at 299 (finding that a class representative's participation through "years of litigation" supported an incentive award). Here, Plaintiff filed her case in state court on September 30, 2015, and the case was later removed to this Court on November 17, 2015. Therefore, the case has been pending for approximately 18 months. Given the length of the litigation and Plaintiff's involvement in it, the Court concludes that this factor is neutral.

### e. The Personal Benefit Enjoyed by the Class Representative as a Result of the Litigation

An incentive award may be appropriate when a class representative will not gain any benefit beyond that she would receive as an ordinary class member. See *Razilov*, 2006 WL 3312024, at *4 (approving an incentive payment award where the only benefit a class representative was going to receive from a settlement was the same statutory damages other class members would receive). Here, Plaintiff will receive no relief beyond that available to members of the class in general—fifty cents ($0.50) off the admission fee for the 2017 San Diego County Fair. Absent an incentive award, Plaintiff will only receive a coupon

essentially, assuming she attends the 2017 County Fair. Therefore, this factor also favors approval of an incentive award.

**f. Weighing the Factors**

Considering the relevant factors above, the Court concludes that an incentive award of $5,000 for Gillian Brown, the class representative, is "just and reasonable under the circumstances." *Van Vranken*, 901 F.Supp. at 299.

**<u>CONCLUSION</u>**

For the reasons stated, the Court GRANTS the motion for final approval of the settlement, it awards Plaintiff Gillian Brown a $5,000 incentive award, and awards $4,869.71 in expenses, for a potential total of $759,869.71.

The Court reserves its approval as it pertains to attorneys' fees until after supplemental briefing and additional evidence is provided by counsel.

IT IS SO ORDERED.

Dated: May 15, 2017

DAVID H. BARTICK
United States Magistrate Judge