1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18

| | |
|---|---|
| GILLIAN BROWN, on behalf of herself and all others similarly situated,<br><br>                                    Plaintiff,<br><br>v.<br><br>22ND DISTRICT AGRICULTURAL ASSOCIATION, a State entity; and DOES 1 through 10, inclusive,<br><br>                                    Defendants. | Case No.:  15-cv-02578-DHB<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES AWARD [ECF NOS. 42, 48] AND GRANTING AWARD OF COSTS AND FEES TO DEFENDANT AND SETTLEMENT ADMINSTRATOR [ECF NO. 49]** |

19
20
21
22
23
24
25
26
27
28

Pending before the Court are the remaining portions of Plaintiff Gillian Brown's ("Plaintiff") Motion for Final Approval of Class Action Settlement [ECF No. 42], which the Court requested supplemental briefing on in its earlier final approval order [ECF No. 47].  In that order, the Court requested the parties file a renewed motion for attorneys' fees addressing (1) how the settlement should be characterized and (2) how attorneys' fees should be calculated depending on the settlement's characterization.  (ECF No. 47 at 23.) On May 23, 2017, Plaintiff filed a supplemental brief addressing the issues raised by the Court. (ECF No. 48.)  On May 24, 2017, Defendant 22nd District Agricultural Association ("Association") filed its supplemental brief addressing separate issues.  (ECF No. 49.)

After reviewing the parties' briefs, the Court GRANTS Plaintiff's final approval motion and her renewed motion for attorneys' fees [ECF Nos. 42, 48].

## **BACKGROUND**

**The Settlement Agreement**

<u>The Economic Relief</u>

Each admission entrance fee for the 2017 San Diego County Fair (subject to a $750,000 total reduction cap) shall be reduced fifty (50) cents from the then-current fair market value of such admission prices as determined by the Neutral Expert or as otherwise agreed upon between Class Counsel and the Association and the Association's counsel. To the extent the reduction cap has not been met through the 2017 San Diego County Fair fee reduction, each admission entrance fee for the 2018 San Diego County Fair (subject to a $750,000 total reduction cap, inclusive of the previous year reduction) shall be reduced *pro rata* based on a calculation of the expected 2018 attendance and the remaining amount under the reduction cap.  The Neutral Expert shall conduct its analysis and provide its recommendations no later than the Opt-Out and Objection Deadline, and the final agreed upon pricing for the 2017 San Diego County Fair shall be submitted to the Court in connection with the Motion.  (ECF No. 39-1 at 36.)

<u>The Common Fund</u>

The Association and Solar shall also pay a Common Fund of exactly $175,000 ($170,00 by the Association and $5,000 by Solar) which shall be used to compensate (1) the Settlement Administrator for its services in providing publication and website notice and other settlement administration services (as detailed in the Settlement), (2) Plaintiff Gillian Brown for an incentive award (subject to Court approval), (3) Class Counsel for their attorneys' fees and costs (subject to Court approval), and (4) the Neutral Expert described above.  Neither the Association nor Solar shall oppose the requests made from the Common Fund, so long as they do not exceed the amounts set forth in Section 2.20. Any unawarded or unrequested portion of the Common Fund shall be paid to a privacy

protection-related *cy pres* recipient to be proposed to the Court in connection with the Motion for Final Approval.  (*Id.* at 36-37.)

<u>Attorneys' Fees and Costs to Class Counsel</u>

Class Counsel may move the Court for an award of attorneys' fees and expenses paid from the Common Fund, not to exceed $150,000.  Neither the Association nor Solar shall oppose any request which does not exceed $150,000.  The amount of attorneys' fees and costs approved by the Court shall be paid from the Common Fund Settlement Administrator to Class Counsel's Client Trust Account, as directed by written instructions from Class Counsel.  This payment shall be made no later than the Funding Date[1].  Court approval of attorneys' fees and costs, or their amount, will not be a condition of Settlement. In addition, no interest will accrue on such amounts at any time.  (*Id.* at 33.)

<u>Final Approval of Class Action Settlement Order</u>

While examining the settlement agreement, the Court suspected that the class settlement benefit, a reduced admission price, was a coupon.  (ECF No. 47 at 22.)  For that reason, the Court expressed reluctance to award attorneys' fees based on the lodestar method Plaintiff requested.[2]  (*Id.*)  However, class counsel argued that the Settlement should not be characterized as a coupon settlement at the final approval hearing.  For that

---

[1] "Funding Date" means the date, which is no later than twenty-five (25) calendar days after the Effective Date, on which the Association and Solar shall make payments to the recipients of the Common Fund pursuant to Section 9.2 of this Agreement.  (ECF No. 39-1 at ¶ 2.18.)  "Effective Date" means the fifth (5th) business day after the last of the following dates: (A) All Parties, Association's Counsel, Class Counsel and Solar's Counsel have executed this Agreement; (B) If no objections to the Settlement are filed, the date the Court has entered without material change, the Final Approval Order; and (C) If one or more objections to the Settlement are filed, subject to the Court having entered, without material change, the Final Approval order, the final disposition of any related appeals therefrom, and in the case of no appeal or review being filed, expiration of the applicable appellate period.  (*Id.* at ¶ 2.12.)

[2] The Court therefore reasoned that it must determine whether a contingency fee award would be reasonable based on the actual redemption value of the coupons awarded.  (ECF No. 47 at 23.)  If so, the Court questioned whether a determination could be made before the 2017 San Diego County Fair concluded.  (*Id.*)

reason, the Court ordered the parties to submit further briefing to address the following questions:

(1) Whether the Settlement should be characterized as a coupon settlement?

(2) If this is a coupon settlement, whether the Court can determine a reasonable contingency fee without actual evidence of the value of the redemption?

(3) Whether the Court can use the total reduction cap ($750,000) as the actual redemption value or the fifty cent ($0.50) reduction in admission price?

(4) Whether there is a form of non-coupon relief the Class is due to receive which allows the Court to use the lodestar method to calculate attorneys' fees under 28 U.S.C. § 1712(b) and *In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013)?  (*Id.* at 23.)

The Court also ordered the parties to file a renewed motion for attorneys' fees by May 25th, 2017. (*Id.*)  On May 23, 2017, Plaintiff and her class counsel filed a "Supplemental/Renewed Motion for Attorneys' Fees." (ECF No. 48.)  The Association filed "Further Briefing Regarding 1) Court's Order Granting Plaintiff's Motion For Final Approval Of Class Action Settlement; And 2) Plaintiff's Motion For Attorneys' Fees, Costs, And Incentive Award." (ECF No. 49.)

## DISCUSSION

Rule 23(h) of the Federal Rules of Civil Procedure authorizes a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Rule 54(d)(2) specifies that requests shall be made by motion "unless the substantive law governing the action provides for the recovery of…fees as an element of damages to be proved at trial," the rule itself does not authorize the awarding of fees.  In class actions, statutory provisions and the common fund exception to the "American Rule" provide the authority for awarding attorneys' fees.  *See In re Toys R Us-Delaware, Inc.— Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 459 (C.D. Cal. 2014) (citation omitted).  Under normal circumstances, once it is established that a party is entitled to attorneys' fees, "[i]t remains for the district court to determine what fee

is reasonable." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotation marks omitted).

### A. Attorneys' Fees Calculation

In agreement with the Court's prior assessment, Plaintiff admits that the Settlement is a coupon settlement. (ECF No. 48 at 6.) However, Plaintiff argues that the Court can determine a reasonable contingency fee without actual evidence of the redemption value because the Settlement ensures every dollar is spent. *Id.* at 6-11. Specifically, Plaintiff contends that class counsel is entitled to compensation now as the redemption rate is 100% and the redemption value is $750,000 due to the Settlement's structure. *Id.* at 7-9. Citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000), Plaintiff asserts that a percentage of the total settlement fund is the appropriate measure of class counsel's fee award. *Id.* at 8-9. Plaintiff then asserts that class counsel's request for $145,130.29 is fair and reasonable as it falls below 25% of the Common Fund. *Id.* at 9.

The Association did not address whether the Settlement was a coupon or how class counsel's fees should be calculated in its supplemental brief. (ECF No. 49.)

CAFA provides that attorneys' fees awarded in connection with a class action coupon settlement must be based on the value to class members of redeemed coupons. See 28 U.S.C. § 1712(a). Where a settlement only provides for coupon relief for the class, the entire attorneys' fee award is attributable to the awards of coupons. *In re HP Inkjet Printer Litig.*, 716 F.3d at 1182. In such cases, "the court must determine a reasonable contingency fee based on the actual redemption value of the coupons awarded. *Id.* at 1184. Section 1712(b) applies in situations where a coupon settlement also provides for non-coupon relief, such as equitable or injunctive relief. Specifically, subsection (b) requires that if "a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee shall be based upon the amount of time class counsel reasonably expended working on the action." 28 U.S.C. § 1712(b)(1). A lodestar with a multiplier method can be used to determine attorney's fees. *Id.* at § 1712(b)(2). However, lodestar fees may only be awarded if the class obtains non-coupon relief. *In re HP Inkjet*

*Printer Litig.*, 716 F.3d 1173, 1185 (9th Cir. 2013).  Section 1712(c) established the general rule: If a settlement gives coupon and equitable relief and the district court sets attorneys' fees based on the value of the entire settlement, and not solely on the basis of injunctive, then the district court must use the value of the coupons redeemed when determining the value of the coupons part of the settlement.

Here, Section 1712(b) governs the Court's calculation of attorneys' fees as class counsel obtained both coupon and non-coupon relief for the Class.  The Class' economic relief in the Settlement, Paragraph 9.2(A), states, "**The Reduced Admission Prices.**  Each admission entrance fee for the 2017 San Diego County Fair (subject to a $750,000 total reduction cap) shall be reduced fifty (50) cents from the then-current fair market value of such admission prices as determined by the Neutral Expert or as otherwise agreed upon between Class Counsel and the Association and the Association's counsel."[3] (ECF No. 39-1 at 36.)  Paragraph 5.3 of the Settlement states, "**Equitable Relief/Consent Decree.**  The Parties agree that the Final Approval Order shall contain a consent decree which requires that the Association shall be compliant with FACTA for all periods of time going forward from the date of its execution of this Agreement." *Id.* at 32.  The Court concluded in its final approval order that the Settlement was fair and adequate after weighing all the relevant factors.  (ECF No. 47 at 20.)  As such, Section 1712(b) governs the Court's calculation of attorneys' fees here.

Although class counsel contends the $145,130.29 figure is fair and reasonable as it falls below 25% of the common fund, even the 25% benchmark rate may be inappropriate in some cases.  *See Vizciano v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).  As *Vizciano* instructs, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Id.*  "[C]ourts cannot

---

[3] The Association reduced its admission prices for all fairgoers to the 2017 San Diego County Fair, without a reduction cap exception.  As a result, if attendance raises admission revenue above $1.5 million, the reduction cap will be satisfied in 2017.  (ECF No. 48 at 6 fn. 2.)

rationally apply any particular percentage—whether 13.6 percent, 25 percent or any other number—in the abstract, without reference to all the circumstances of the case." *Id.* (internal quotation marks omitted). The paramount inquiry is "whether in arriving at its percentage [the district court] considered all the circumstances of the case and reached a reasonable percentage." *Id.* The Court finds that the record does not provide sufficient insight to fully consider all the circumstances surrounding the Settlement and apply any particular percentage. Accordingly, the Court elects to use the lodestar method to determine a reasonable attorneys' fee as the Court can more appropriately quantify the time and skill class counsel put forth in the litigation.

### B. Lodestar Method

Plaintiff argues that the revised lodestar calculation and class counsel's proffered hourly rates are reasonable. (ECF No. 48 at 2-6.) Specifically, Plaintiff asserts class counsel's revised time entries reflect the actual time spent preparing the final approval motion, traveling to the final approval hearing, and working through the settlement administration process through present day. *Id.* at 2. Plaintiff also asserts that class counsel's reasonable hourly rates are now supported by satisfactory evidence. *Id.* at 3-6.

The Association also did not address this argument in their supplemental brief. (*See* ECF No. 49.)

A lodestar with a multiplier method can be used to determine attorney's fees. 28 U.S.C. § 1712(b)(2). The lodestar figure is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensly v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar "presumptively provides an accurate measure of reasonable attorney's fees." *See Harris v. Marhoefer*, 24 F.3d 16, 18 (9th Cir. 1994); *Clark v. City of Los Angeles*, 803 F.2d 987, 990 (9th Cir. 1986). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; (6) the awards made in similar cases. *See Vizciano*, 290 F.3d at 1048-50. A court may increase or decrease the

15-cv-02578-JAH (DHB)

lodestar amount in rare or exceptional cases.  *See Blum v. Stenson*, 465 U.S. 886, 898-901 (1984); *Harris*, 24 F.3d at 18; *Clark*, 803 F.2d at 990-91.  The court in *In re Bluetooth* instructs as follows:

> "The court may adjust [the lodestar] upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.  Foremost among these considerations, however, is the benefit obtained for the class.  Thus, where the plaintiff has achieved only limited success, counting all hours expended on the litigation—even those reasonably spent—may produce an excessive amount, and the Supreme Court has instructed district courts to instead award only that amount of fees that is reasonable in relation to the results obtained."  *In re Bluetooth*, 654 F.3d at 941-42.

To assist the court in calculating the lodestar, a plaintiff must submit "satisfactory evidence…that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum*, 465 U.S. at 895-96 n. 11.  The relevant community is that in which the district court sits.  See *Schwarz v. Sec'y of Health and Human Serv.*, 73 F.3d 895, 906 (9th Cir. 1995). Declarations regarding the prevailing market rate in the relevant community suffice to establish a reasonable hourly rate.  *See Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998); *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996) (noting that declarations from attorneys in the community can provide adequate proof of the reasonableness of counsel's rates).  Courts also use survey data to evaluate the reasonableness of attorneys' rates.  *See Fish v. St. Cloud State Univ.*, 295 F.3d 849, 852 (8th Cir. 2002) ("The parties presented two surveys of hourly rates, one reporting fees received by seven Twin Cities class action firms and the other reporting fees received by sixty-two firms doing a variety of work around the state.  The court set individual hourly rate at the median of the class action survey and near the upper limit of the statewide survey, also taking into account the number of years an attorney had been admitted to practice"); *Am. Petroleum Inst. V. United States EPA*, 72 F.3d 907, 912 (D.C. Cir. 1996) ("Petitioners

have provided support for the reasonableness of their rates through affidavits and a survey of rates and we hold that these rates are reasonable").

### 1.  Reasonableness of Counsel's Hourly Rates

In the initial attorneys' fee request, class counsel contended his firm's attorneys' hourly rates were reasonable and had been approved by many courts in the Los Angeles area, San Francisco Bay area, and other counties throughout California.  (ECF No. 39 at 25.) Specifically, counsel sought to have the Court approve Gaines & Gaines attorneys' rates as follows: $650 per hour for Kenneth S. Gaines[4] (1970 graduate of UC Hastings College of Law); $300 per hour for third-year associate Evan S. Gaines (graduate of Michigan State University College of Law); $350 per hour for fifth-year associate Sepideh Ardestani (2009 J.D. graduate of Whitter School of Law and 2010 L.L.M. graduate of Santa Clara School of Law); $450 per hour for the firm's managing shareholder Daniel F. Gaines[5] (2007 graduate of University of Virginia School of Law); and $500 per hour for Alex P. Katofsky (1999 graduate of University of the Pacific McGeorge School of Law).  (*Id.* at 25-26.)  However, class counsel failed to proffer evidence that these rates were reasonable and merely cited two Ninth Circuit decisions to justify its lodestar calculation as reasonable.  Class counsel did not provide the Court with satisfactory evidence that the requested rates are in line with those prevailing for similar work in the relevant community, the Southern District of California.  In fact, class counsel attempted to justify his attorney's fee award request by contending that the proffered rates have been approved in other districts and counties.  (ECF No. 39 at 25.)

---

[4] Class counsel declares Kenneth S. Gaines rate of $650 per hour is based on his over four decades of practice, his vast litigation experience in complex litigation, and his involvement in class actions.  (ECF No. 39-1 at 9.)

[5] Class counsel declares his rate of $450 per hour is reasonable and prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.  (ECF No. 39-1 at 9.)

Here, class counsel submits declarations and the Laffey Matrix as satisfactory evidence to demonstrate that class counsel's proffered rates[6] are reasonable.  Class counsel tenders the declarations of John W. Davis and Aparajit Bhowmik, two San Diego attorneys with class action and complex litigation experience.  (*See* ECF Nos. 48-2 and 48-3.) Specifically, attorney Bhowmik declares that the prevailing hourly rates within his law firm are as follows: "$175 for a law clerk, $395 for a 6 year lawyer, $450 for a 7-year lawyer, $550 for a 10 year lawyer/partner (me), $595 for a 16 year lawyer/partner, and $695 for a 40-year lawyer/partner."  (ECF No. 48-2 at 2.)  Attorney Bhowmik also declares that the "rates suggested as reasonable by Class Counsel are fair and proper within the San Diego community."  *Ibid.*  In addition, attorney Davis affirms that class counsel's "proffered hourly rates of between $300 (for a young associate) and $650 (for a senior partner) are appropriate, reasonable and commensurate with the rates" charged in the San Diego community.  (ECF No. 48-3 at 1-2.)   Moreover, the Laffey Matrix illustrates that class counsel's proposed hourly rates fall far below the rates attorneys with similar years out of law school.  (ECF Nos. 48 at 5, 48-1, Exh. B.)  The Court finds the Laffey Matrix is not satisfactory evidence here as it predominantly focuses on rates based on years out of law school rather than focusing on rates for similar services by a comparably-skilled lawyers. Notwithstanding the Laffey Matrix, the Court finds that class counsel provided satisfactory

---

[6] Class counsel contends his firm's attorney's hourly rates are reasonable and have been approved by many courts in the Los Angeles area, San Francisco Bay area, and other counties throughout California. (ECF No. 39 at 25.) Specifically, counsel seeks to have the Court approve Gaines & Gaines attorneys' rates as follows: $650 per hour for Kenneth S. Gaines[6] (1970 graduate of UC Hastings College of Law); $300 per hour for third-year associate Evan S. Gaines (graduate of Michigan State University College of Law); $350 per hour for fifth-year associate Sepideh Ardestani (2009 J.D. graduate of Whitter School of Law and 2010 L.L.M. graduate of Santa Clara School of Law); $450 per hour for the firm's managing shareholder Daniel F. Gaines[6] (2007 graduate of University of Virginia School of Law); and $500 per hour for Alex P. Katofsky (1999 graduate of University of the Pacific McGeorge School of Law).  (*Id.* at 25-26.)

evidence[7] which demonstrates that the requested hourly rates are reasonable in the Southern District.

The Court recognizes that the quality of class counsel's work was high throughout the case. Class counsel was able to recover a settlement when class members suffered no actual monetary loss as a result of the Association's alleged conduct. The Association also maintained that Plaintiff could not prove "willful" conduct on the Association's part as it did not discover the deficient receipts and hired Solar, a company the Association trusted was an expert in installing point of sale systems and certified that its system was legally compliant. Nevertheless, class counsel persuaded the Association to settle the case to the Class' benefit and include equitable relief in its settlement in which the Association shall be compliant with FACTA for all periods of time going forward. Thus, the Court finds that the requested rates are not excessive and encompass the full nature of class counsel's services.

## 2. Reasonableness of Hours Expended

A court may award attorneys' fees only for the number of hours it concludes were reasonably expended on the litigation. *Hensley*, 461 U.S. at 434 ("[Counsel] should make a good faith effort to exclude…hours that are excessive, redundant, or otherwise unnecessary"). "[T]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of th[e] hours worked…" *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992)); see *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) ("[C]ounsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended"); *Gucci Am., Inc. v. Pieta*, 2006 WL 4725707, at *2 (C.D. Cal. July 17, 2006) (holding that, although a fee applicant "is not

---

[7] Class counsel also pointed out cases within the Southern District in which attorneys' fee awards similar to their request were found reasonable. (ECF No. 48 at 5) (citing *Hartless v. Clorox*, 273 F.R.D. 630, 644 (S.D. Cal. 2011)).

required to record in great detail how each minute of [his] time was expended…[he must] list[ ] [the] hours and identity[ ] the general subject matter of [the] time expenditures"); *Pac. W. Cable Co. v. City of Sacramento*, 693 F.Supp. 865, 870 (E.D. Cal. 1988) ("The cases do not indicate that every minute of an attorney's time must be documented; they do, however, require that there be adequate description of how the time was spent, whether it be on research or some other aspect of the litigation…").

In the Court's final approval order, the Court found class counsel's proffered hours worked estimate unreasonable due to an overestimation of future time to be spent litigating the case.  (ECF No. 47 at 29.)  For that reason, Class counsel attached a "Revised Attorney Time/Task Chart" as an exhibit to the Second Supplemental Declaration of Daniel F. Gaines.  (ECF No. 48-1 at 5.)  After amendment, the chart shows class counsel expended 153 hours (reduced from a previous estimate of 198.7 hours) working on this matter.  (ECF No. 48 at 3.)  The Court finds that the updated *future* time entries now reflect the time each attorney actually spent preparing the final approval motion and work with the settlement administration process through present day.  Accordningly, the Court finds that the time counsel has spent on this litigation, as outlined in the "Revised Attorney Time/Task Chart" was reasonably expended.

### 3. Calculation of the Lodestar Figure

Based on the foregoing evidence, the updated lodestar figure is reduced from $93,070 to $72,065.  (ECF No. 48-1 at 5.)

### 4. Whether the Court Should Adjust the Fee Award

Once the court has determined the lodestar, it should consider whether an award of that magnitude is reasonable, taking into account "'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'"  *In re Bluetooth*, 654 F.3d at 941-42 (quoting *Hanlon*, 150 F.3d at 1029).  As the Ninth Circuit has repeatedly endorsed, the most important factor is the benefit obtained for the class.  *Id.* at 942; *see also McCown v. City of Fontana*, 565 F.3d 1097, 1102 (9th Cir. 2009) (the ultimate reasonableness of the fee "is determined primarily by

reference to the level of success achieved by the plaintiff"); *see also In re Omnivision Technologies, Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. 2008) ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award").

Class counsel contends that a 2.01 multiplier is appropriate here, yielding a total award request of $145,130.29.[8]  (ECF No. 48 at 9.)  Class counsel's briefing states in conclusory fashion that its adjusted fee award is appropriate and reasonable as it falls within the acceptable multiplier range and below the 25% benchmark the Ninth Circuit first set forth in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  (*See* ECF Nos. 39 at 27, 48 at 9.)  The Court does not agree.  *See Blum*, 465 U.S. at 898-901 (finding a court may increase or decrease the lodestar amount in rare or exceptional cases).

Class counsel asserts the complexity and novelty of the issues here weigh in favor of the Court approving its fee request.  (ECF No. 39 at 22.)  Specifically, class counsel highlights that defendants rarely are found liable for willful violation of FACTA; therefore, counsel faced issues concerning FACTA's interpretation and requirements to prove willful violations on a class-wide basis.  *Id.*  However, as spelled out by the Supreme Court in *Blum*, "[t]he novelty and complexity of the issues presumably were fully reflected in the number of billable hours recorded by counsel and thus do not warrant an upward adjustment in a fee."  *Blum*, 465 U.S. 899.  Likewise, "the quality of representation" is generally reflected in the reasonable hourly rate; thus, it "may justify an upward adjustment only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'"  *Ibid.* (citing *Hensley*, 461 U.S. at 434).  Class counsel has not presented specific evidence to show the hourly rates failed to

---

[8] In their earlier motion, class counsel represented that the multiplier of 1.56, resulting in a proposed fee of $145,130.29, would result in a fair fee award.  (ECF No. 39 at 27.)  Now, without additional justification, class counsel contends that a 2.01 multiplier is appropriate, yielding the same proposed fee award.  (ECF No. 48 at 9.)

provide a reasonable fee for the quality of representation provided.  Accordingly, the Court finds that rationalizing an upward adjustment on these factors is inappropriate here as it would be tantamount to double counting.

Class counsel also argues that the requested fee is warranted due to the result obtained for the class.  (ECF Nos. 39 at 20-22, 48 at 9-11.)  The Court disagrees.  Although the results obtained by class counsel here are notable given the state of the evidence, "acknowledgement of the results obtained generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award."  *Blum*, 465 U.S. at 900 (internal quotation marks omitted).  Although the Association must remain compliant with FACTA as a result of the settlement, the class here did not receive any monetary benefit from the Settlement.  Also, the Court presumes that the Association's motivation to remain FACTA compliant is to reduce the likelihood of future litigation.  Nevertheless, class counsel's briefing does not point to any authority which requires an upward adjustment to the fee based on results similar to those obtained here.  As such, the Court does not consider the results achieved exceptional.  *See Hensley*, 461 U.S. at 434-438.  Therefore, the Court finds the result obtained by class counsel do not weigh in favor of adjusting the fee award upward.

In addition, class counsel asserts that its commitment to this litigation while facing the risk of nonpayment should not be overlooked in assessing the reasonableness of the fee request.  (ECF No. 39 at 23.)  The Court agrees.  The Court recognizes that class counsel was forced to forego other employment in order to devote necessary time to this litigation.  Also, significant financial risk of nonpayment was evident from the outset of the case as class counsel took this matter on contingent basis.  That risk was amplified by the fact that defendants are rarely, if ever, found liable for willful violation of FACTA.  However, the risk here was somewhat abstract as the parties had not even reached class certification or summary judgment stages.  Nonetheless, class counsel bore the financial burden throughout the duration of this litigation.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d

1370, 1377 (9th Cir. 1993). Thus, the Court finds the risk of nonpayment weighs in favor of an upward adjustment to the fee award.

Here, class counsel has not satisfied their burden of proving that the requested multiplier (2.01) is necessary to calculate a fair and reasonable fee. The record does not contain sufficient evidence to support such an upward adjustment to the lodestar figure calculated under the basic standard of reasonable rates times reasonable hours. Although the Association will not oppose an attorneys' fees request up to $150,000 under the Settlement, this does not entitle class counsel to fashion a multiplier which brings the fee award to that threshold upon every submission. Class counsel introduced no new evidence that greater enhancement was necessary to provide fair and reasonable compensation. Taking all facts into consideration, the Court finds that class counsel's initially-proposed multiplier (1.56) is appropriate here. Accordingly. The Court concludes that a fee of $112,421.40 ($72,065 x 1.56) is a fully compensatory attorneys' fee award here.

The Court hereby approves and orders an attorneys' fee award of $112,421.40 be entered on behalf of Plaintiff's counsel and paid from the Common Fund of the Settlement.

## C. Fees and Expenses

In its supplemental brief[9], the Association points out that the Court failed to consider the full costs and expenses of publishing and administering the Settlement. (ECF No. 49 at 3-5.) Specifically, the Association correctly identifies that the Court did not disburse compensation to the Settlement Administrator from the Settlement's Common Fund in its earlier final approval order. *Id.* at 3. The Association asserts that it advanced $1,985.00 to publish the Settlement in the Uptown San Diego Examiner and the San Diego Business Journal. *Id.* at 4 (citing ECF No. 42-2 at 4). Likewise, the Association asserts that the Settlement Administrator has incurred $7,210.00 in fees and costs to administer the

---

[9] The Association's supplemental brief also includes an argument regarding the Court's analysis on Section 6.1 of the Settlement agreement. (ECF No. 49 at 5-7.) However, the Association did not raise any new argument not addressed within the Court's prior final approval of class action settlement order [ECF No. 47]. Thus, the Court will not address the Association's clear-sailing provision argument here.

Settlement.  *Id.*  For those reasons, the Association requests that the Court order the Settlement fees be paid out of the Common Fund to the Association and Settlement Administrator, respectively.  *Id.* at 5.   Courts regularly award administrative costs associated with providing notice to the class.  *See, e.g., Odrick v. UnionBancal Corp.*, 2012 WL 6019495, at *7 (N.D. Cal. Dec. 3, 2012).  Accordingly, the Court concludes that the Association's and Settlement Administrator's costs were reasonably incurred for the benefit of the class.  Therefore, the Court awards and orders $9,195.00 to be paid out of the Common Fund of the Settlement, $1,985.00 to the Association and $7,210.00 to the Settlement Administrator.

## **CONCLUSION**

For the above reasons, the Court GRANTS Plaintiff's Motion for Final Approval of Class Settlement [ECF No. 42] as follows:

1.   The Court GRANTS class counsel's motion for attorneys' fees and awards them in the amount of $112,421.40; and

2.  The Court GRANTS the Association's and request for an award of cost and expenses to be paid out of the Common Fund of the Settlement to the Association and the Settlement Administrator in the amount of $9,195.00;

3.  Pursuant to the Consent Decree in the parties' Settlement, IT IS HEREBY ORDERED that the Association shall be compliant with FACTA for all periods of time going forward from the date of the Settlement's execution [September 6, 2016].

IT IS SO ORDERED.

Dated:  July 21, 2017

LOUISA S PORTER for
DAVID H. BARTICK
United States Magistrate Judge